[No. B167190. Second Dist., Div. Six. Nov. 2, 2004.]

GEORGE BURNETT et al., Plaintiffs and Appellants, v.
CHIMNEY SWEEP, LLC, et al., Defendants and Respondents.

COUNSEL

Myers, Widders, Gibson, Jones & Schneide and Dennis Neil Jones for Plaintiffs and Appellants.

Bonetati, Sasaki, Kincaid & Kincaid, Inc., Mark L. Kincaid and April C. Balangue for Defendant and Respondent Chimney Sweep.

Wesierski & Zurek, Christopher P. Wesierski and Laura J. Barns for Defendant and Respondent Courtland-Dane Management Group, Inc.

## OPINION

**YEGAN, J.**—George and Marie Burnett appeal from a judgment on the pleadings in favor of Chimney Sweep, LLC, and Courtland-Dane Management Group, Inc., respondents. They also appeal from postjudgment orders awarding attorney fees to respondents. The action arises from the growth of mold in premises leased by appellants from Chimney Sweep. Courtland-Dane is Chimney Sweep's property manager.

Appellants contend: (1) respondents' motions for judgment on the pleadings were untimely; (2) in ruling on the motions, the trial court erroneously considered extrinsic evidence; (3) judgment on the pleadings was erroneously granted; (4) the trial court abused its discretion in refusing to grant leave to amend the complaint; (5) Courtland-Dane was not entitled to attorney fees because it was not a party to the lease; and (6) the attorney fees awarded were excessive. We reverse the order granting judgment on the pleadings. This moots the fourth, fifth and sixth contentions.

*Procedural and Factual Background*

Commencing September 1, 1998, Chimney Sweep leased to appellants a commercial space (hereafter the premises) consisting of approximately 470 square feet in a hotel in Solvang. Appellants were doing business as Beau Monde Perfumes. The lease permitted them to use the premises as a "gift shop and hotel convenience shop."

On April 5, 2002, appellants filed a complaint against respondents alleging seven causes of action: premises liability, general negligence, breach of contract, negligent maintenance of premises, negligent maintenance of nuisance, intentional infliction of emotional distress, and conversion. In the complaint, appellants alleged as follows: when they "entered the [premises] in 1998, they observed water stains on the back wall and ceiling of the

[premises]." Between April and September 2001, they "observed the existence of excessive moisture and the growth of mildew and mold" on the premises. The complaint did not state the cause or source of the excessive moisture.

Appellants "immediately and repeatedly notified" respondents of this "dangerous condition" and requested that it "be repaired." Respondents refused to repair it. Appellants, consequently, "inhale[d] the toxic airborne spores and fumes emitted from the mold," sustaining "severe physical injury and discomfort, and severe emotional and mental distress." Furthermore, their "business inventory and belongings" became "contaminated by toxic mold and airborne mold spores," requiring "immediate and extensive cleaning and/or disposal . . . ." Appellants were unable "to conduct their business" at the premises.

In moving for judgment on the pleadings, respondents contended that paragraphs 8.4 and 8.8 of the lease shielded them from liability. Paragraph 8.4 required appellants to maintain "full replacement cost" insurance coverage on their personal property. Paragraph 8.8 was entitled "Exemption of Lessor from Liability." It provided: "Lessor shall not be liable for injury or damage to the person or goods, wares, merchandise, or other property of Lessee, . . . whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, or from the breakage, leakage, obstruction or other defects of pipes, fire sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, or from any other cause, whether said injury or damage results from conditions arising upon the Premises or upon other portions of the Building of which the Premises are a part, from other sources or places, and regardless of whether the cause of such damage or injury or the means of repairing the same is accessible or not. . . . Notwithstanding Lessor's negligence or breach of this Lease, Lessor shall under no circumstances be liable for injury to Lessee's business or for any loss of income or profit therefrom."

Relying on paragraphs 8.4 and 8.8 of the lease, the trial court granted the motions for judgment on the pleadings. It awarded attorney fees of $101,600 to Chimney Sweep and $38,020 to Courtland-Dane.[1]

---

[1] The orders awarding attorney fees are not included in the record on appeal. Pursuant to Evidence Code sections 452, subdivision (d), and 459, subdivision (a), we take judicial notice of the following documents in the trial court's file, case No. 1088878: (1) the order filed June 4, 2003, awarding attorney fees of $101,600 to Chimney Sweep; and (2) the order filed December 26, 2003, awarding attorney fees of $38,020 to Courtland-Dane.

*The Trial Court Did Not Err in Granting Permission to File Untimely Motions for Judgment on the Pleadings*

The trial court granted respondents' applications for permission to file untimely motions for judgment on the pleadings. Appellants contend that the trial court erred because respondents failed to establish good cause for the late filings.

■ Appellants' contention is without merit. The applicable statute—Code of Civil Procedure section 438, subdivision (e)[2]—"authorizes the trial court to permit late filings of such motions and does not specify any grounds which might serve to limit its power to do so." (*Sutherland v. City of Fort Bragg* (2000) 86 Cal.App.4th 13, 25, fn. 4 [102 Cal.Rptr.2d 736].) Section 438, subdivision (e), provides: "No motion may be made pursuant to this section if a pretrial conference order has been entered pursuant to Section 575, or within 30 days of the date the action is initially set for trial, whichever is later, *unless the court otherwise permits*." (Italics added.) The statute does not impose a "good cause" requirement. When the Legislature intends that good cause be required, it says so. For example, section 437c, subdivision (a), provides that a motion for summary judgment "shall be heard no later than 30 days before the date of trial, unless the court for good cause orders otherwise."

■ "It is evident that whether to grant . . . leave [to file a late motion for judgment on the pleadings] is a matter residing in the trial court's discretion to control litigation before it." (*Sutherland v. City of Fort Bragg, supra,* 86 Cal.App.4th at p. 25, fn. 4.) There was no abuse of that discretion. "The interests of all parties are advanced by avoiding a trial and reversal for defect in pleadings." (*Ion Equipment Corp. v. Nelson* (1980) 110 Cal.App.3d 868, 877 [168 Cal.Rptr. 361].)

*The Trial Court Did Not Erroneously Consider Extrinsic Evidence*

■ "Presentation of extrinsic evidence is . . . not proper on a motion for judgment on the pleadings. [Citation.]" (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999 [79 Cal.Rptr.2d 544].) Appellants contend that the trial court erroneously considered extrinsic evidence. The extrinsic evidence consisted of (1) a signed copy of the 1998 lease between appellants and Chimney Sweep, and (2) the management agreement, effective April 1, 1999, between Chimney Sweep and Courtland-Dane.

Appellants attached an unsigned, incomplete copy of the lease to their complaint. They alleged that they did not have a signed, completed copy.

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

They reserved the right to amend the complaint to incorporate a signed, completed copy when respondents provided it.

In support of their motions for judgment on the pleadings, respondents provided a signed, completed copy of the lease. Appellants did not object to the trial court's consideration of this copy. In their written opposition to respondents' motions, appellants quoted verbatim from paragraph 1.2(a) of the signed copy.

■ In the absence of an objection, the trial court could consider the signed copy of the lease. (See *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1721 [53 Cal.Rptr.2d 662]; *O'Neil v. General Security Corp.* (1992) 4 Cal.App.4th 587, 594, fn. 1 [5 Cal.Rptr.2d 712]; *Lumbermens Mut. Cas. Co. v. Vaughn* (1998) 199 Cal.App.3d 171, 178 [244 Cal.Rptr. 567].) But even if the trial court had erred, the error would have been harmless because the lease provisions at issue are the same in both the signed copy and the unsigned copy attached to the complaint. It is undisputed that the trial court could properly consider the unsigned copy in determining whether to grant judgment on the pleadings. "[W]hen a written instrument is attached to the pleading and properly incorporated therein by reference, the court may examine the exhibit and treat the pleader's allegations of its legal effect as surplusage. [Citation.]" (*Lumbermens Mut. Cas. Co. v. Vaughn, supra,* 199 Cal.App.3d at p. 178.)

Appellants, on the other hand, objected to the trial court's consideration of the management contract between Chimney Sweep and Courtland-Dane. The trial court, however, expressly stated that it did not consider the management agreement: "[Appellants] say that I relied upon the management agreement, which I couldn't, and I didn't . . . ." "[A]ll I relied upon was the lease itself and the pleadings . . . ."

*Judgment on the Pleadings Was Erroneously Granted*

A. *Standard of Review*

■ "A motion for judgment on the pleadings performs the same function as a general demurrer, and hence attacks only defects disclosed on the face of the pleadings or by matters that can be judicially noticed. [Citations.]" (*Cloud v. Northrop Grumman Corp., supra,* 67 Cal.App.4th at p. 999.) " 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) " '[W]e are not bound by the determination of the trial court, but are required to render our independent judgment on whether a cause of action has been

stated.' [Citation.]" (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 198 [51 Cal.Rptr.2d 622].) We accept as true the complaint's factual allegations and give them a liberal construction. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515–516 [101 Cal.Rptr.2d 470, 12 P.3d 720].) "We consider evidence outside the pleadings which the trial court considered without objection. [Citation.]" (*Pomona College v. Superior Court, supra*, 45 Cal.App.4th, at p. 1721 [53 Cal.Rptr.2d 662].)

■ Because a motion for judgment on the pleadings, like a demurrer, raises only questions of law, we may consider new theories on appeal to challenge or justify the trial court's ruling. (*O'Neil v. General Security Corp.* (1992) 4 Cal.App.4th 587, 606 [5 Cal.Rptr.2d 712]; *B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959 [230 Cal.Rptr. 192].) "[W]e review the trial court's disposition of the matter, not its reasons for the disposition. [Citation.]" (*Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448 [37 Cal.Rptr.2d 790].)

B. *Chimney Sweep*

■ Appellants contend that the exculpatory clause of paragraph 8.8 did not preclude them from stating a cause of action against Chimney Sweep. They maintain that the clause was unenforceable. An exculpatory clause "may stand only if it does not involve 'the public interest.' " (*Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 96 [32 Cal.Rptr. 33, 383 P.2d 441], fn. omitted.) Appellants argue that the exculpatory clause of paragraph 8.8 affects the public interest because their claim arises from the presence of toxic mold, which "is unquestionably a matter of current and intense public interest."

■ We disagree. An invalid exculpatory clause affecting the public interest "involves a transaction which exhibits some or all of the following [six] characteristics. [1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional

reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (*Tunkl v. Regents of University of California, supra,* 60 Cal.2d 92 at pp. 98–101, fns. omitted.) None of these six characteristics was present in the instant case. " 'A [commercial] lease is a matter of private contract between the lessor and the lessee with which the general public is not concerned.' " (*Inglis v. Garland* (1936) 19 Cal.App.2dSupp. 767, 773 [64 P.2d 501].)

The matter, however, is not resolved simply because the exculpatory clause has no impact upon the public interest. "[T]he law does not look with favor upon attempts to avoid liability or secure exemption for one's own negligence, and such provisions are strictly construed against the person relying upon them. [Citations.]" (*Basin Oil Co. of Cal. v. Baash-Ross Tool Co.* (1954) 125 Cal.App.2d 578, 594 [271 P.2d 122].) The general rule is as follows: "For an agreement to be construed as precluding liability for 'active' or 'affirmative' negligence, there must be express and unequivocal language in the agreement which precludes such liability. [Citations.] An agreement which seeks to limit liability generally without specifically mentioning negligence is construed to shield a party only for passive negligence, not for active negligence. [Citations.]" (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 932-933 [218 Cal.Rptr. 839].) But the "active-passive dichotomy" is not "wholly dispositive" of the issue. (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 632 [119 Cal.Rptr. 449, 532 P.2d 97].) Whether an exculpatory clause "covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." (*Id.,* at p. 633;[3] see also *Hohe v. San Diego Unified School Dist.* (1990) 224 Cal.App.3d 1559, 1567 [274 Cal.Rptr. 647]; *Ben-Zvi v. Edmar Co.* (1995) 40 Cal.App.4th 468, 475 [47 Cal.Rptr.2d 12] ["The purpose of the law of contracts is to protect the reasonable expectations of the parties."].)

██ The exculpatory clause of paragraph 8.8 contains two provisions that concern us. The first provision shields Chimney Sweep from liability for property damage or personal injury. This provision does not specifically

---

[3] *Rossmoor Sanitation, Inc. v. Pylon, Inc., supra,* 13 Cal.3d 622, involved an indemnity provision, but "cases have expressly held the general rules of construing indemnity provisions apply to exculpatory clauses [citations]." (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist., supra,* 172 Cal.App.3d at p. 933, fn. 3.)

mention negligence. Accordingly, this provision would ordinarily be construed as shielding Chimney Sweep from liability "only for passive negligence, not for active negligence." (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist., supra,* 172 Cal.App.3d at p. 933.) The second provision shields Chimney Sweep from liability for appellants' loss of profits. This provision specifically mentions negligence: "Notwithstanding Lessor's negligence or breach of this lease, Lessor shall under no circumstances be liable for injury to Lessee's business or for any loss of income or profit therefrom."

■■■ "Whether conduct constitutes active or passive negligence depends upon the circumstances of a given case and is ordinarily a question for the trier of fact; active negligence may be determined as a matter of law, however, when the evidence is so clear and undisputed that reasonable persons could not disagree. [Citations.]" (*Rossmoor Sanitation, Inc. v. Pylon, Inc., supra,* 13 Cal.3d at p. 629.) In *Butt v. Bertola* (1952) 110 Cal.App.2d 128, 138 [242 P.2d 32], the appellate court determined that, as a matter of law, the landlords had been actively negligent "in knowingly maintaining defective sewerage facilities and in taking patently inadequate measures for the repair of those facilities, with knowledge of the injuries to [tenant's] property which would ensue." Leaking sewerage water had damaged the tenant's property and had forced him to close his business.

The *Butt v. Bertola* court concluded that an exculpatory clause in the lease did not shield the landlords from liability for their active negligence. The clause, which did not specifically mention negligence, was similar to the first provision of the exculpatory clause in paragraph 8.8 of appellants' lease. The clause provided: " 'It is agreed by the parties hereto, that said Lessor shall not be liable for damages to any goods, property, or effects in or upon said demised premises, caused by gas, water, or other fluid from any source whatsoever.' " (*Butt v. Bertola, supra,* 110 Cal.App.2d at p. 138.) The appellate court decided that it "cannot, without more explicit and specific words in this clause, conclude that the minds of the parties met and agreed to exempt [landlords] from the consequences of their own wrongful acts when of the kind and nature of those here involved." (*Ibid.*) The court noted "that the trend of decisions is to exclude from such general clauses the exemption of a landlord from the consequences of his own affirmative negligence . . . ." (*Id.,* at p. 140.)

■■■ Based on the allegations in appellants' complaint, Chimney Sweep was actively negligent in refusing to remediate the problems caused by the excessive moisture and mold infestation on the premises. Chimney Sweep contends that it had no duty to take remedial action. It relies on paragraph 7.1(a) of the lease, which imposed on appellants the duty to "keep the

Premises and every part thereof in good order, condition and repair . . . ."[4] The excessive moisture, however, might have been due to a leak from an area of the hotel under Chimney Sweep's control, such as the roof, a hotel room, or a common area. Furthermore, the mold might have migrated to the premises from an area under Chimney Sweep's control. These are factual issues that cannot be resolved on a motion for judgment on the pleadings. In these circumstances, it cannot be said as a matter of law that the exculpatory clause shields Chimney Sweep from liability. (*Butt v. Bertola, supra,* 110 Cal.App.2d 128, 138–140; see also *Barkett v. Brucato* (1953) 122 Cal.App.2d 264, 278–279 [264 P.2d 978].)

The scope of the exculpatory clause is not affected by paragraph 8.4 of the lease, which required appellants to maintain insurance coverage on their personal property. Nothing in the lease suggests that, if Chimney Sweep's active negligence caused damage to appellants' personal property, their sole recourse would be to file a claim with their insurance company.

Chimney Sweep argues that, irrespective of the exculpatory clause, the trial court properly granted judgment on the pleadings as to the cause of action for intentional infliction of emotional distress. The elements of this cause of action are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by

---

[4] Paragraph 7.1(a) of the lease provides: "(a) . . . Lessee shall, at Lessee's sole cost and expense and at all times, keep the Premises and every part thereof in good order, condition and repair (whether or not such portion of the Premises requiring repair, or the means of repairing the same, are reasonably or readily accessible to Lessee, and whether or not the need for such repairs occurs as a result of Lessee's use, any prior use, the elements or the age of such portion of the Premises), including, without limiting the generality of the foregoing, all equipment or facilities specifically serving the Premises, such as plumbing, heating, air conditioning, ventilating, electrical, lighting facilities, boilers, fired or unfired pressure vessels, fire hose connections if within the premises, fixtures, interior walls, interior surfaces of exterior walls, ceilings, floors, windows, doors, plate glass, and skylights, but excluding any items which are the responsibility of Lessor pursuant to Paragraph 7.2 below. Lessee, in keeping the Premises in good order, condition and repair, shall exercise and perform good maintenance practices. Lessee's obligations shall include restorations, replacements or renewals when necessary to keep the Premises and all improvements thereon or a part thereof in good order, condition and state of repair."

Paragraph 7.2 provides in part: "Lessor's Obligations. . . . Lessor . . . shall keep in good order, condition and repair the foundations, exterior walls, structural condition of interior bearing walls, exterior roof, fire sprinkler and/or standpipe and hose (if located in the Common Areas) or other automatic fire extinguishing system including fire alarm and/or smoke detection systems and equipment, fire hydrants, parking lots, walkways, parkways, driveways, landscaping, fences, signs and utility systems serving the Common Areas and all parts thereof . . . ."

the defendant's outrageous conduct. [Citations.]" (*Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975].)

■ Chimney Sweep contends that the complaint's allegations do not meet the standard of extreme and outrageous conduct required to state a claim.[5] The contention is without merit. In *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 921 [162 Cal.Rptr. 194], the appellate court concluded that the plaintiff tenant had stated a cause of action for intentional infliction of emotional distress by alleging that she had suffered " 'extreme emotional distress' as a result of the [landlord's and property manager's] 'knowing, intentional, and willful' failure to correct defective conditions of the premises." The *Stoiber* court observed that whether the failure to act was extreme and outrageous "under the present allegations, presents a factual question—it cannot be said as a matter of law that [plaintiff] has not stated a cause of action." (*Id.*, at p. 922.)

The trial court, therefore, erroneously granted Chimney Sweep's motion for judgment on the pleadings.

## C.  *Courtland-Dane*

Appellants contend that the trial court erred in applying the exculpatory clause of paragraph 8.8 to Courtland-Dane because it was neither a party to the lease nor a third party beneficiary. Courtland-Dane argues that, based on the allegations in the complaint, appellants are precluded from denying that it was a party to the lease. Appellants alleged: "[Appellants] entered into a written lease agreement and addendum thereto . . ., under the terms of which CHIMNEY SWEEP and COURTLAND-DANE, and each of them, rented the Property to [appellants] . . . ." This allegation was incorporated in each of the seven causes of action against Courtland-Dane.

But the signed and completed copy of the lease, provided to the trial court by Courtland-Dane, shows that it was not a party to the lease. The lease never mentions Courtland-Dane. It designates "Chimney Sweep Inn LLC" as sole lessor of the premises. The actual lease takes precedence over appellants' allegations as to its contents. (See *Byrne v. Harvey* (1962) 211 Cal.App.2d 92, 104, fn. 6 [27 Cal.Rptr. 110].)

Thus, the exculpatory clause could not be applied to Courtland-Dane as a party to the lease. Nor could it be applied on the ground that Courtland-Dane was a third party beneficiary. Civil Code section 1559 governs third party beneficiary law. It provides: "A contract, made expressly for the benefit of a

---

[5] Courtland-Dane makes the same contention.

third person, may be enforced by him at any time before the parties thereto rescind it." (*Ibid.*) "This section excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it. [Citation.]" (*Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 400 [113 Cal.Rptr. 585, 521 P.2d 841].) " 'A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that third party and such intent appears on the terms of the contract. [Citation.] . . . [¶] . . . Whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered. [Citation.]' [Citation.]" (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1064 [95 Cal.Rptr.2d 864].) " ' "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him . . . ." ' [Citations.]" (*Jones v. Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717, 1724 [33 Cal.Rptr.2d 291].)

The parties to the lease clearly did not intend that the exculpatory clause would benefit the lessor's property manager. The clause is entitled, "Exemption of Lessor from Liability." It does not mention any third parties. In contrast, the indemnification clause of paragraph 8.7 expressly applies to "Lessor and its agents."

■ The exculpatory clause, therefore, cannot prevent appellants from stating a cause of action against Courtland-Dane. Even if the exculpatory clause had applied to Courtland-Dane, there still would have been a question whether Courtland-Dane had been actively negligent.

■ The allegations of appellants' tort claims against Courtland-Dane are sufficient to survive a motion for judgment on the pleadings. (See *Stoiber v. Honeychuck, supra,* 101 Cal.App.3d at pp. 928–931 [causes of action in tort may be stated against landlord's property manager for failure to correct defective conditions].) Appellants alleged: (1) Courtland-Dane was "in the business of leasing and managing the Property" and was acting as Chimney Sweep's agent; (2) as manager, Courtland-Dane "had a duty to repair and remedy any defective and/or dangerous, uninhabitable, and unsafe condition on the Property"; (3) despite Courtland-Dane's "knowledge and awareness of the dangerous condition of the Property, [it] unreasonably failed, refused, and breached [its] duty to repair the dangerous conditions or remove the existence of excessive moisture and the growth of mildew and mold in the Property and to maintain the Property in a reasonably safe condition"; and (4) as a result of Courtland-Dane's refusal to take remedial action, appellants suffered damages.

On the other hand, Courtland-Dane is entitled to judgment on the pleadings as to the cause of action for breach of contract because it was not a party to the lease.

## Disposition

The judgment on the pleadings and orders awarding attorney fees are reversed. The trial court is directed to enter a new and different order denying the motions for judgment on the pleadings, except that it shall grant Courtland-Dane's motion as to the third cause of action for breach of contract. Appellants shall recover their costs on appeal.

Gilbert, P. J., and Perren, J., concurred.