Filed 11/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RICHARD GARCIA, | B305555 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC693789) |
| v. | |
| D/AQ CORPORATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gary Y. Tanaka, Judge.  Affirmed.

Pettit Kohn Ingrassia Lutz & Dolin, Bron E. D'Angelo and Jennifer N. Lutz for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome; Law Office of Eric G. Anderson and Ted R. Crisler for Defendants and Respondents.

_____

**SUMMARY**

Plaintiff was the lessee under a lease for commercial premises that began in 2009. There was a change in ownership of the premises in 2012 and the lease continued without interruption. The lease contained an exculpatory clause providing that the lessor "shall not be liable for injury . . . to the person . . . of Lessee" and others, whether resulting from conditions arising on the premises or from other sources.

In April 2016, plaintiff fell down a staircase after hitting his head on a beam in the doorway at the top of the staircase. He sued defendants, alleging causes of action for premises liability and negligence. He alleged his fall was caused by the inherently dangerous condition of the staircase due to numerous building code violations.

Defendants moved for summary judgment and the trial court granted the motion, based on the exculpatory clause in the lease. We affirm the judgment.

**FACTS**

In 2009, plaintiff Richard Garcia entered into a commercial lease for premises in Gardena with the then-owner of the property, for use in his office furniture business. In 2012, the owner sold the property to defendant Feit South Bay, LLC (Feit). Feit hired defendant D/AQ Corporation, doing business as Daum Commercial Real Estate Services, to manage the property.

In October 2012, the parties extended the term of the lease to December 2014, and in October 2014, they extended the term to December 2017. Plaintiff occupied the premises continuously from 2009 to December 2017. Plaintiff inspected the premises twice before signing the lease in 2009, and the stairway was never changed or modified between that time and the date of the

2

accident. He used the stairs and the doorway to the upstairs room "a couple of times a month" throughout his tenancy.

When the ownership changed in 2012, plaintiff met with Doran Tajkef, who worked for D/AQ. Mr. Tajkef told plaintiff he would be acting as property manager, as the agent for Feit. Mr. Tajkef was there for 10 minutes and "[l]ooked around." There was no discussion of the staircase or the doorway at the top, and Mr. Tajkef did not go upstairs; "[h]e just went to the bottom of the stairs and looked." He "only looked at the railing and made a joke about . . . it being rough." That was the only conversation or meeting plaintiff remembers having about the new ownership. He does not remember any conversation, before his accident, about the stairs or the doorway and the low beam. Plaintiff did not communicate any concerns about the stairway or the doorway to defendants before the accident.

The accident occurred in April 2016, at the top of the staircase, at the doorway to an upstairs office room then being used for storage. Plaintiff intended to go into the office room. When he got to the top stair, he reached for the door handle. It "didn't open because it kind of sticks." He pushed harder on the door, which gave way suddenly. He "didn't bend down far enough" and hit the crown of his head on the beam at the top of the door frame, which knocked him backwards.

Plaintiff had used both the doorway and the staircase as part of his business at various times before his injury. He had seen another person hit his head on the low doorway at least once before his injury.

Defendants sought summary judgment on two grounds. Plaintiff could not establish the element of duty, defendants asserted, because a landlord out of possession is not liable for

3

dangerous conditions of property of which it has no actual knowledge.  They further contended that, even if a duty could be established, the clause in the lease exempting the lessor from liability for injury to plaintiff was enforceable.

Plaintiff's opposition argued defendants did not relinquish control of the premises to plaintiff, and owed him a duty to maintain the premises in safe condition.  He contended his fall was a direct result of the staircase's inherently dangerous condition due to extensive building code violations that were never inspected or remedied by defendants.  The exculpatory clause was not enforceable, plaintiff asserted, because it did not release defendants "from their duty to reasonably inspect the premises."  Plaintiff presented a declaration from an expert in construction and building codes, who concluded the staircase violated nine sections of the building code, including a requirement for a conforming landing at the top of the stairway.

The trial court granted defendants' summary judgment motion on the ground the lease exempted defendants from liability, and did not address the issue of duty.

Plaintiff filed a timely appeal from the judgment.

## DISCUSSION

### 1.    Summary Judgment Principles

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action."  (Code Civ. Proc., § 437c, subd. (p)(2).)  Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (*Id.,* subd. (c).)

4

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.) It is no longer called a "disfavored" remedy. (*Ibid.*) "Summary judgment is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Ibid.*) On appeal, "we take the facts from the record that was before the trial court . . . . ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' " (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

## 2. Exculpatory Clause Principles

The principles governing exemptions from liability in a commercial lease are described in *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 43-44 (*Frittelli*).

As pertinent here, *Frittelli* observed: "Courts have affirmed lease terms that exempted the landlord from liability arising from conduct by the landlord." (*Frittelli, supra,* 202 Cal.App.4th at p. 43.) "To the extent the exemption . . . purports to shield the lessor and its agents from liability for negligence, the exemption is subject to the public policy disfavoring attempts by contract to limit liability for future torts." (*Ibid.*) The court explained this policy "finds expression in Civil Code section 1668." (*Ibid.*) Section 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Civ. Code, § 1668.)

5

*Frittelli* explained that Civil Code section 1668 ordinarily "invalidates contracts that purport to exempt an individual or entity from liability for future intentional wrongs [citation] and gross negligence [citation]." (*Frittelli, supra,* 202 Cal.App.4th at p. 43.)  And, it "prohibits contractual releases of future liability for ordinary negligence when 'the "public interest" is involved or . . . a statute expressly forbids it.' " (*Ibid.*)  However, an exemption from liability "located within a commercial lease between business entities" does *not* implicate the public interest (*id.* at pp. 43-44), although such a clause is " ' "strictly construed against the person relying upon [it]" ' " (*id.* at p. 44).

An exculpatory clause that does not specifically mention negligence "would ordinarily be construed as shielding [the lessor] from liability 'only for passive negligence, not for active negligence.' " (*Burnett v. Chimney Sweep, LLC* (2004) 123 Cal.App.4th 1057, 1066-1067 (*Burnett*); see *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 629 (*Rossmoor*) ["Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law."].)

The question whether an exculpatory clause covers a given case " ' "turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control.  When the parties knowingly bargain for the protection at issue, the protection should be afforded.  This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." ' " (*Frittelli, supra,* 202 Cal.App.4th at p. 44.)

### 3.     This Case

Where, as here, no extrinsic evidence was submitted concerning the meaning of the exculpatory clause, "we determine the parties' intentions as disclosed by the lease itself, looking at the plain language of [the clause], viewed within the lease as a whole," and "examine whether [the clause] clearly discloses an intent to exempt the lessor from liability for [ordinary] negligence." (*Frittelli, supra,* 202 Cal.App.4th at p. 44.)

Paragraph 8.8 of the lease, entitled "Exemption of Lessor from Liability," provided in pertinent part: "Lessor shall not be liable for injury . . . to the person . . . of Lessee . . . or any other person in or about the Premises . . . whether the said injury . . . results from conditions arising upon the Premises or upon other portions of the Building, or from other sources or places."[1]

---

[1]     In its entirety, paragraph 8.8 states: "Lessor shall not be liable for injury or damage to the person or goods, wares, merchandise or other property of Lessee, Lessee's employees, contractors, invitees, customers, or any other person in or about the Premises, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, indoor air quality, the presence of mold or from the breakage, leakage, obstruction or other defects of pipes, fire sprinklers, wires, appliances, plumbing, HVAC or lighting fixtures, or from any other cause, whether the said injury or damage results from conditions arising upon the Premises or upon other portions of the Building, or from other sources or places. Lessor shall not be liable for any damages arising from any act or neglect of any other tenant of Lessor nor from the failure of Lessor to enforce the provisions of any other lease in the Project. Notwithstanding Lessor's negligence or breach of this Lease, Lessor shall under no circumstances be liable for injury to Lessor's business or for any loss of income or profit therefrom."

7

Paragraph 8.8 expresses a clear intent to exempt defendants from liability for injury to plaintiff. There is no evidence the parties intended anything other than what the clause says. This is so under any construction, strict or otherwise. The public interest is not involved. Plaintiff has not alleged or presented evidence of an intentional wrong, gross negligence, or active negligence. At most, plaintiff's evidence shows defendants did not inspect the property for building code violations—establishing at most "mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law." (*Rossmoor, supra,* 13 Cal.3d at p. 629.)

Plaintiff cites no authorities that support a contrary conclusion. Plaintiff cites Civil Code section 1953 (preventing modification or waiver of a landlord's duty of care to prevent personal injury), but that only applies to residential leases, not commercial leases. (Civ. Code, § 1953, subd. (a).)

None of the cases plaintiff cites involves claims of passive negligence in maintaining a commercial property. *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 94, involved an exculpatory clause in the conditions for admission to a charitable research hospital—not a commercial lease. *Butt v. Bertola* (1952) 110 Cal.App.2d 128 involved misconduct by a commercial lessor that was "at the very least, active or affirmative negligence, not mere ordinary negligence." (*Id.* at p. 138 ["misconduct in knowingly maintaining defective sewerage facilities and in taking patently inadequate measures for the repair of those facilities, with knowledge of the injuries to plaintiff's property which would ensue"].) *Burnett, supra,* 123 Cal.App.4th at pages 1067-1068, involved a complaint that the lessor "was actively negligent in refusing to remediate the

8

problems caused by the excessive moisture and mold infestation on the premises," and the court could not say "as a matter of law that the exculpatory clause shields [the lessor] from liability." *Henrioulle v. Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 515, involved an exculpatory clause in a residential lease, not a commercial lease. *Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 724, 726, included discussion of the principle that a lessor with a duty to maintain and repair the roof of its premises could not escape liability for injuries to a tenant by delegating its duty to repair water leaks to an independent contractor—not whether the two parties to a commercial lease can contract for a release of the lessor's liability.

Plaintiff insists the exculpatory clause does not release defendants from their duty to reasonably inspect the premises, "including their failure to look for and/or remedy the violations [of the] Building Code Sections which created the dangerous condition causing [plaintiff's] injuries and had existed throughout [plaintiff's] tenancy, of which he had no knowledge." While plaintiff did not know the staircase violated the building code, he certainly knew about the low beam at the top of the door frame that "knocked me backward," and he had seen another person hit his head on the same low doorway. More to the point, as the trial court observed, failure to discover a dangerous condition "is what the [exculpatory] provision purports to specifically cover."

In sum, this is a case where plaintiff alleges ordinary, passive negligence—"the failure to discover a dangerous condition or to perform a duty imposed by law." (*Rossmoor, supra,* 13 Cal.3d at p. 629; *Frittelli, supra,* 202 Cal.App.4th at p. 48.) The exculpatory clause shields the lessor from liability for ordinary negligence. Its language is clear, stating the lessor

9

"shall not be liable for injury . . . to the person . . . of Lessee." These circumstances make this a case where, "[w]hen the parties knowingly bargain for the protection at issue, the protection should be afforded." (*Frittelli,* at p. 44.)

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


WILEY, J.