Filed 8/16/24  Cerda v. City of Los Angeles CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LOUIS CERDA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>    Defendants and Respondents. | B322004<br><br>(Los Angeles County<br>Super. Ct. No. BC721977) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malcolm Mackey, Judge.  Affirmed.

Cole & Loeterman and Dana M. Cole for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Scott Marcus, Chief Assistant City Attorney, Shaun Dabby Jacobs and Jonathan H. Eisenman, Deputy City Attorneys, for Defendant and Respondent.

Plaintiff Louis Cerda appeals following the trial court's entry of judgment on the pleadings in favor of the City of Los Angeles (the City) based on Cerda's failure to submit an adequate government claim before filing suit. Cerda argues the court abused its discretion by permitting the City to pursue the motion for judgment on the pleadings so late in the proceedings. Cerda also contends the court erred in concluding Cerda's government claim was insufficient. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      The Fire Department's Investigation of Cerda**

On September 29, 2017, Los Angeles Fire Department paramedic Cerda and his partner transported an intoxicated female patient from an airplane at the Los Angeles International Airport to a hospital. On October 3, 2017, the Los Angeles Fire Department (the Department) removed Cerda from field work and placed him in a paid administrative assignment while it investigated the patient's claim that during transport, she was sexually assaulted and digitally penetrated by a firefighter matching Cerda's description.

Subsequently, the Department's daily staffing roster, which was distributed to all fire stations in the City, showed that "Cerda was no longer in field service" and was "assigned to an administrative detail." The roster also displayed " 'V-Code 09CP,' " which Cerda alleged "generally means that the referenced firefighter is the subject of a criminal investigation and/or arrest and pending criminal charges."

A week after Cerda was reassigned, his lawyer emailed an assistant fire chief, stating that Cerda had not received notice of the complaint against him and was innocent of the conduct

2

alleged by the patient.[1]  Counsel requested Cerda be "immediately restore[d]" to "his normal assignment."  Two days later, the assistant fire chief responded that the Department was in "the initial stages of an administrative investigation involving" Cerda, and that "[d]ue to the serious nature of the complaint, Firefighter Cerda is restricted from having patient contact pending a more thorough review of the allegations."  Cerda's lawyer asked the assistant chief to interview the firefighter and police officer who were with Cerda when the female patient was in his presence, and also asserted that Cerda's "[c]ontinued administrative detention . . . constitute[d] an improper adverse employment action."  Five days later, Cerda's lawyer sent another email asking for further explanation.

On October 30, 2017, Cerda was returned to restricted duty at a fire station, "in that he was not permitted to have any patient contact and/or ride a paramedic rig, but was permitted to ride an engine."  On November 15, 2017, Cerda returned to unrestricted field duty.

Cerda's attorney thereafter sent emails to the City's employee relations representative requesting details about the allegations against Cerda and expressing frustration with the investigation.  In reply, the representative explained the Department had followed protocol in its investigation.  In further response to the attorney's repeated emails, on January 26, 2018, the representative wrote:  "The link to file a claim for damages can be found on the City of Los Angeles website.  Once you file

---

[1]     Cerda had informally learned of the allegations made by the patient when he was placed in the administrative detail.

3

your claim, you may direct your questions to the City Attorney's office."

## II.    Cerda's Letter to the Fire Chief

On January 29, 2018, Cerda's attorney sent a letter to the fire chief complaining that "[n]o one from the Department ever formally or informally advised" Cerda "about the nature or progress of any investigation, despite repeated requests for same." Counsel asserted that "the Department's unreasonably slow investigation, its refusal to provide any information to [Cerda] and most importantly, the false and defamatory V-Code designation . . . have caused significant detriment to [Cerda]." "Because no explanation has ever been offered," Cerda's counsel wrote, "we believe that discrimination may be the source of this episode." Counsel closed with a request to discuss the matter with the chief or someone in his "immediate command staff." The City Attorney's Office responded to the letter, reiterating the Department removed Cerda from field duty in order to investigate the allegations made by the female patient.

## III.   The Government Claim

On May 14, 2018, Cerda filed a government tort claim with the City clerk. In the portion of the claim form asking, "How did the DAMAGE or INJURY occur," Cerda wrote "Racial Discrimination & Defamation (Right to Sue issued by DFEH)." The form also asked, "What particular ACT or OMISSION do you claim caused the injury or damage? Please give names of City employees causing the injury or damage . . . ." Cerda responded: "Disciplinary action based on false allegation of patient abuse." Where the form asked, "When did DAMAGE or INJURY occur," Cerda wrote "9/2/17-11/15/17."

4

The City denied Cerda's government claim.  In a June 28, 2018 letter, the City advised Cerda that some of his claims were late and his "recourse at this time in regard to the untimely claim(s) is to apply without delay to the Los Angeles City Clerk for leave to present a late claim."  Cerda did not apply for leave to present a late claim.

## IV.    Cerda's Lawsuit

On September 19, 2018, Cerda sued the City[2] for "discrimination based on race," "failure to prevent discrimination and/or workplace harassment," and "defamation."  (Capitalization omitted.)  The defamation cause of action alleged that from October 3, 2017 through November 17, 2017, the City continued to notify fire stations that Cerda "was subject to 'discipline' and . . . coded said notifications with an indication that [Cerda] was subject to criminal charges.  Said notifications went to various individuals at each such fire station, including fire captains and other firefighters and fire department personnel."

The City demurred to Cerda's complaint and the trial court overruled the demurrer.  Following discovery, the City moved for summary judgment or summary adjudication.  The trial court denied the motion.  The City then petitioned this court for a writ of mandate.  This court issued an alternative writ directing the trial court to summarily adjudicate Cerda's two discrimination-related causes of action in the City's favor because there was no evidence in the record that the City treated him differently on account of his race.  (*City of Los Angeles v. Superior Court* (July 20, 2020, B304991) [nonpub. order].)

---

[2]    The complaint alleged the City controlled and operated the Department.

## V.    Motion for Judgment on the Pleadings

On remand, with the defamation claim remaining, the City filed a motion for judgment on the pleadings.  The City argued the government claim did not provide a sufficient factual basis for Cerda's defamation cause of action and was untimely because it was filed more than six months after the cause of action accrued.[3]

Cerda opposed the motion, arguing that his letter to the fire chief, sent months before his government claim, provided the City sufficient notice of his defamation cause of action.  Cerda further asserted that under the "law of the case doctrine," because the Court of Appeal's alternative writ order stated that the defamation cause of action was left to be tried, the case must proceed to trial.  Cerda also argued the motion was filed too close to trial, required court permission to be brought under Code of

---

[3]     In its motion, the City argued that under the single publication rule, the defamation action began to accrue on October 3, 2017, the *first* date the Department published about Cerda's removal from field work in the roster, and therefore Cerda's tort claim was due by April 3, 2018.  (See *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1245 ["Under the single-publication rule, with respect to the statute of limitations, publication generally is said to occur on the 'first general distribution of the publication to the public.'  [Citations.]  Accrual at that point is believed to provide adequate protection to potential plaintiffs, especially in view of the qualification that repetition of the defamatory statement in a *new edition* of a book or newspaper constitutes a new publication of the defamation that may give rise to a new cause of action, with a new accrual date."].)

6

Civil Procedure section 438, subdivision (e),[4] and must be denied because the City did not seek leave to file it. However, Cerda did not address the timeliness of his government claim. Instead, he wrote in the procedural history section of his brief that "[t]he alleged defamatory publications contained in the daily issued [rosters] occurred from October 3, 2017, when Cerda was placed on his administrative detail, thr[ough] October 19, 2017, when the defamatory references were removed."

In its reply, the City pointed out that by acknowledging the alleged defamatory statements were only published between October 2, 2017 and October 19, 2017, Cerda effectively conceded his government tort claim was due by April 2, 2018 and was untimely.

After hearing argument, the trial court found in favor of the City. The court held that the City's motion was timely because the court was permitting it to proceed per Code of Civil Procedure, section 438, subdivision (e). The court concluded that Cerda's government claim was factually insufficient, and it was too late for him to amend it. The trial court did not address the timeliness of Cerda's government claim. The court also found the law of the case doctrine did not apply because the Court of Appeal's writ did not consider the sufficiency of Cerda's

---

[4]    Subdivision (e) states: "No motion may be made pursuant to this section if a pretrial conference order has been entered pursuant to Section 575, or within 30 days of the date the action is initially set for trial, whichever is later, unless the court otherwise permits." (Code Civ. Proc., § 438, subd. (e).)

7

government claim.[5]  The trial court entered judgment in favor of the City on May 20, 2022, and amended its judgment on June 22, 2022 to include costs.  Cerda timely appealed.

## DISCUSSION

Cerda argues that the City's motion for judgment on the pleadings was untimely and the court erred in permitting the City to proceed with the motion.  He also argues his government claim was timely and sufficient.  As we explain below, his contentions lack merit.

## I.    The Court Did Not Abuse Its Discretion by Permitting the City to Bring Its Motion

Cerda argues the trial court abused its discretion by permitting the City to proceed with its motion for judgment on the pleadings because the City could have challenged the claim's timeliness by demurrer at the inception of proceedings.  Cerda states that the City's delay caused him to expend significant time and expense conducting discovery, opposing summary judgment, and engaging in the writ of mandate proceedings.

---

[5]      Under the law of the case doctrine, " 'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' " (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301.)

In a single sentence, Cerda reiterates on appeal his argument that law of the case mandates trial on the defamation cause of action.  We agree with the trial court that because the adequacy and timeliness of Cerda's government claim were not adjudicated in the writ proceedings, law of the case does not apply.  (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505 [law of the case applies to determined or implicitly determined legal issues].)

8

Code of Civil Procedure section 438, subdivision (e) states: "No motion [for judgment on the pleadings] may be made pursuant to this section if a pretrial conference order has been entered . . . or within 30 days of the date the action is initially set for trial, whichever is later, *unless the court otherwise permits*." (Italics added.) This section "authorizes the trial court to permit late filings of such motions and does not specify any grounds which might serve to limit its power to do so." (*Sutherland v. City of Fort Bragg* (2000) 86 Cal.App.4th 13, 25, fn. 4.) "The statute does not impose a 'good cause' requirement." (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1063 (*Burnett*).) Nor does it "require a moving party seek 'permission,' i.e., leave of court, before filing a motion." (*Korchemny v. Piterman* (2021) 68 Cal.App.5th 1032, 1055.) Whether " 'to grant . . . leave [to file a late motion for judgment on the pleadings] is a matter residing in the trial court's discretion to control litigation before it.' " (*Burnett*, at p. 1063.)

Here, although the City filed its motion for judgment on the pleadings after the initial trial date, the court expressly gave the City permission to proceed with the motion. Cerda cites no authority suggesting the court lacked discretion to consider the motion for judgment on the pleadings because its later filing caused Cerda to unnecessarily expend time and money.

Moreover, as we explain below, Cerda's failure to file a timely government claim regarding his defamation claim was fatal to his case. (See *State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239 ["failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity"].) " 'The interests of all parties are advanced by avoiding a trial and reversal for defect in

9

pleadings.' " (*Burnett, supra*, 123 Cal.App.4th at p. 1063.) We therefore find no abuse of discretion.

## II.    Cerda's May 2018 Government Claim Was Untimely

" ' "The standard for granting a motion for judgment on the pleadings is essentially the same as that applicable to a general demurrer, that is, under the state of the pleadings, together with matters that may be judicially noticed, it appears that a party is entitled to judgment as a matter of law." [Citation.]' [Citation.] '[J]udgment on the pleadings must be denied where there are material factual issues that require evidentiary resolution.' " (*Southern California Edison Co. v. City of Victorville* (2013) 217 Cal.App.4th 218, 227.) "We review de novo the judgment following the granting of a motion for judgment on the pleadings." (*SP Investment Fund I, LLC v. Cattell* (2017) 18 Cal.App.5th 898, 905.)

At issue here is the timeliness of Cerda's government claim. The Government Claims Act (Gov. Code, § 810 et seq.)[6] regulates suits for damages against public entities and " 'requires the presentation of "all claims for money or damages against local public entities." ' " (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 989–990 (*DiCampli-Mintz*).) Claims for defamation must be presented within six months of accrual. (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1246, fn. 9; § 911.2, subd. (a).) " ' "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . .

---

[6]    All subsequent undesignated statutory references are to the Government Code.

10

or has been deemed to have been rejected. . . ." (§ 945.4.) "Thus, under these statutes, failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." ' " (*DiCampli-Mintz*, at pp. 989–990.)

The City argues Cerda was barred from bringing his defamation cause of action because his government claim was untimely. The City asserts that the defamation cause of action accrued on October 19, 2017, the last date the alleged defamatory statement was published in the roster according to Cerda's opposition to judgment on the pleadings. Given the six month presentation deadline, Cerda's government claim was due April 19, 2018. However, Cerda did not file his government claim until May 14, 2018.

We agree with the City that the government claim for the defamation cause of action was untimely. We also note that in denying his government claim on June 28, 2018, the City specifically warned Cerda that some of his claims were late and that his "recourse at this time in regard to the untimely claim(s) is to apply without delay to the Los Angeles City Clerk for leave to present a late claim." (See *Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1234 ["if a claim presented does not substantially comply with the claim filing requirement, the public entity must advise the claimant of the deficiencies or lose the right to assert the noncompliance as an affirmative defense"].) Cerda never applied to present a late claim.

On appeal, Cerda argues because the trial court did not grant judgment on the pleadings based on timeliness, we should not consider it. However, " 'we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself.' " (*Alameda County Waste Management Authority v. Waste*

11

*Connections US, Inc.* (2021) 67 Cal.App.5th 1162, 1174 (*Alameda County Waste*).)  The City argued timeliness in its moving papers and reply, and therefore we review that legal issue de novo on appeal.  (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.)

Cerda also contends that because his complaint recites November 15, 2017 as the operative date for defamatory statements, the City's argument lacks merit.  We disagree.  "A party may not avoid a motion for judgment on the pleadings by omitting facts previously alleged in the same case or by suppressing such facts when they prove the pleaded facts false.  [Citation.]  'In addition to the facts actually pleaded, the court considers facts of which it may or must take judicial notice.'  . . . We may . . . 'take judicial notice of admissions in [a party's] opposition to the [motion].'  [Citation.]  [¶]  Among the matters of which judicial notice may be taken are judicial admissions, i.e., admissions and inconsistent statements in the same case."  (*Alameda County Waste, supra*, 67 Cal.App.5th at p. 1174.)

Here, we take judicial notice of Cerda's admission, made in his opposition to the motion for judgment on the pleadings, that "[t]he alleged defamatory publications contained in the daily issued [rosters] occurred from October 3, 2017, when Cerda was placed on his administrative detail, thr[ough] October 19, 2017, when the defamatory references were removed."  Given this admission, Cerda's government claim was 25 days late.  His failure to file a timely government claim with the City bars his defamation cause of action.  (*State of California v. Superior Court, supra*, 32 Cal.4th at p. 1239 ["failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity"].)

12

## III.  The January 2018 Letter to the Fire Chief Does Not Satisfy the Requirements of a Government Claim

Cerda also argues that if we read his government claim "in conjunction with" his January 2018 letter to the fire chief, his claim was timely.  In response, the City asserts the letter did not satisfy the government claim requirement because it was not delivered to the correct entity.  We agree.

Government claims against a municipality must be "deliver[ed] to the clerk, secretary, or auditor thereof" or "mail[ed] . . . to the clerk, secretary, auditor, or to the governing body at its principal office."  (§ 915, subds. (a)(1), (2).)  The January 2018 letter was addressed and delivered to the fire chief, not to the proper government claim recipient.  There is no evidence that the City's clerk, secretary, auditor, or governing body actually received the letter.  (See *DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 992 [claim submitted to someone other than the relevant clerk, secretary, or auditor "requires actual receipt of the misdirected claim by one of the designated recipients"].)  That the same attorney in the City Attorney's office replied to the letter and the government claim does not show actual receipt by the proper government claim recipient.  (*Id.* at p. 991 [" 'It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim.' "].)

We also conclude that Cerda's letter to the chief cannot stand in for a government claim as it failed to indicate that Cerda was seeking damages from the City.  Section 910, subdivision (d), requires the government claim to state, "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim."

13

Subdivision (f) of that statute further states the claimant must "indicate whether the claim would be a limited civil case" and provide the amount claimed if it is less than $10,000.

In *Loehr v. Ventura Community College Dist.* (1983) 147 Cal.App.3d 1071, 1083, the Court of Appeal explained that where necessary information is missing from a government claim, "the test of substantial compliance controls" and "the court must ask whether sufficient information is disclosed on the face of the filed claim 'to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit.' " (*Ibid*.) "The doctrine of substantial compliance, however, cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." (*Ibid*.) The *Loehr* court found that a letter sent by the plaintiff to the entity omitted an essential government claim element. The court pointed out that the letter "was merely a demand that the Board reinstate plaintiff as superintendent of the district or face possible legal action." (*Ibid*.) The court explained that even though the letter expressly threatened litigation and made a passing reference to damages being available under the federal Civil Rights Act, the letter could not be construed as a government claim because it did not seek damages or estimate the plaintiff's damage or loss. (*Ibid*.)

Similarly here, Cerda's January 2018 letter omitted essential elements. Instead of claiming monetary damages, the letter demanded an explanation from the City about why the sexual assault investigation lasted several weeks and why Cerda was never formally advised of the investigation. Although the letter stated the Department had "caused significant detriment to

14

him," the letter never indicated Cerda was seeking damages from the City.  The letter also did not state whether Cerda had a limited civil case, as required by section 910, subdivision (e).

Because Cerda's letter failed to comply with the mandatory requirements of the Government Claims Act, his defamation cause of action is barred.

## DISPOSITION

The judgment is affirmed.  Respondent City of Los Angeles is awarded its costs on appeal.



EDMON, P. J.


We concur:



EGERTON, J.



ADAMS, J.

15