[Civ. No. 12637.  First Dist., Div. One.  Nov. 2, 1944.]

MARY E. KORNBAU, Respondent, v. WILLIAM EVANS, Appellant.

Albert Picard and A. E. Graziani for Appellant.

A. Don Duncan for Respondent.

PETERS, P. J.—Plaintiff, Mary E. Kornbau, brought this action to recover $1,696.10 from defendants, and for other relief. A motion for nonsuit was granted in favor of all the defendants other than William Evans. Judgment was rendered against Evans for the amount sued for, and from that judgment Evans appeals.

Evans does not challenge the sufficiency of the evidence to support the findings. He contends that the action was barred by the statute of limitations, that his demurrer to the complaint should have been sustained on this ground, and that there was an accord and satisfaction of Mrs. Kornbau's claim.

The evidence and the reasonable inferences therefrom most favorable to respondent show the following:

Respondent is an elderly, uneducated woman, barely able to read and write. Appellant has been her attorney since about 1918. In 1931 she had about $2,000 in a bank account, the proceeds of a sale of real property inherited from her mother several years before. Appellant had handled this transaction for respondent, so that he had knowledge of the existence of this fund.

Appellant had several clients, mainly women, for whom he invested their funds, charging them for such services either 1 per cent or a flat fee. He frequently invested such funds by financing the building operations of one William Bernell, a contractor. Bernell would buy a lot, decide on the type of house he was to build, and then come to appellant and request a loan to be secured by a first deed of trust. The proceeds of this loan were used to build the house. When Bernell sold the house he would take a note from the purchaser secured by a second deed of trust for the difference between the amount secured by the first deed of trust and the sale price, after deducting the cash payment made by the purchaser. Bernell paid appellant a fee of either 4 per cent or 5 per cent of the amount of the loan for this service.

One of the transactions of Bernell involved a house in Daly City. This house was sold to a couple by the name of Kochersperger, in April of 1929. The Kocherspergers paid $1,200 in cash, and took the house subject to a $3,750 first lien held by E. L. Tremain, and a second lien held by Bernell, in the amount of $1,925. The note secured by the first deed of trust was a flat loan calling for 7 per cent interest. The note secured by the second deed of trust was an installment note calling for 7 per cent interest and payments of $31.50 per month on interest and principal.

One of the clients of appellant for whom he invested considerable sums of money was Kate Easom, who was originally named as a defendant in this action but who was granted a nonsuit. Appellant bought the Bernell note secured by the second deed of trust on the Kochersperger property for his client Kate Easom, in June of 1929. The Kocherspergers made regular monthly payments of $31.50 to appellant for Kate Easom until about June of 1930, when payments on principal stopped. Appellant testified that he authorized the suspending of prin-

cipal payments in order to permit the Kocherspergers to install a furnace. This suspension of principal payments was accomplished without a written agreement and without changing the face of the note.

Sometime during the second half of 1930 Mrs. Easom informed appellant that she would want $2,000 in cash from her account in January, 1931, in order to take a trip. Appellant apparently decided to raise the money by selling the note secured by the second deed of trust to respondent.

Respondent testified that many times in 1930 appellant "pestered" and "annoyed" her by requesting her to let him have the $2,000 she had in the bank for investment; that he told her he could get her a 7 per cent return on the money in place of the 4 per cent that the banks were then paying; that she should get "a little mortgage" for herself; that she told him that she did not want any real estate; that appellant told her that a deed of trust was about the best investment that could be made and that he had found them about as safe as anything. Respondent also testified that at no time did appellant tell her he was going to invest her money in a second deed of trust. As a result of the importunings of appellant, respondent, on January 29, 1931, gave to appellant $1,705 which she had withdrawn from her bank account. This was practically all the cash respondent had. After the withdrawal she had a balance of $2.85. She testified that when she handed this money to appellant he had her sign some papers; that she expressed a desire to read the documents and started to do so; that he dissuaded her, stating: "I am your lawyer, why not trust me, I am a lawyer, I would not do anything that is wrong"; that he then told her that he was handling money of many women clients; that he took out of the drawer a whole handful of bank books and said: "All these I am collecting interest for ladies . . . your interest will be as good as gold . . . You will get every cent of your money . . . it will only be from three to five years"; that she entrusted everything to him; that she has had no business experience and can barely read or write; that he kept all the papers in the transaction; that she did not then know he was going to invest her money in a second mortgage; that she would not have consented to such a purchase.

When the $1,705 was turned over to appellant he gave respondent a receipt to the effect that the money was to purchase the Kochersperger loan. He did not tell her that he

had waived principal payments on the loan. Respondent testified that, although appellant did not tell her he was going to invest in a second mortgage, he did tell her that the investment was to be with Bernell, a contractor, whom he knew, and promised her "Your money will be all right . . . You can get it within three years . . . Five years at the least you will get the interest and all your money back"; that from the $1,705 appellant deducted 1 per cent for collecting the interest.

Appellant testified that he told respondent that he was going to invest in a second mortgage and informed her of the hazardous nature of such investment. This was specifically denied by respondent and the court found in favor of her credibility. This conflict must be resolved in favor of respondent.

After the money was delivered to him appellant purchased from Mrs. Easom the note secured by the second deed of trust for respondent. He collected and remitted to respondent quarterly payments of interest of $29.67. Respondent received six such quarterly payments, the last being July 8, 1932. There were no payments at all on principal, although the note called for such payments.

The note secured by the first deed of trust was due January 1, 1931. The holders of that note called the note about that time because it was then in default. Thus, when appellant purchased the note secured by the second deed of trust for respondent, the note secured by the first deed of trust was in default. Appellant testified, however, that he had no actual knowledge of the default until September of 1931. In that month he bought the note secured by the first deed of trust from its then owners for his client Kate Easom. Appellant, however, did not take the assignment of the note and deed of trust in Mrs. Easom's name, but in the name of his wife, Ellen Evans. The assignment to his wife was not recorded until January of 1934, although appellant had his wife assign the note and first deed of trust to Mrs. Easom on December 1, 1933, which assignment was recorded that same month. Mrs. Easom knew nothing about these details. She testified that she left the management of her affairs to appellant and that she did not even remember buying the first deed of trust.

Appellant testified that the Kocherspergers were in default

on the payments due on the first deed of trust in September, 1931; that in October of 1931 he had respondent record a notice of default on the second deed of trust; that proceedings on this were dropped because Bernell at that time started making interest payments on both encumbrances; that interest was paid to respondent until July, 1932, when Bernell stopped interest payments. The Kocherspergers gave up the property and appellant rented the property, but, after paying interest on the note secured by the first deed of trust, taxes and insurance, there was nothing left for respondent.

On September 20, 1932, appellant had the Kocherspergers deed the property, subject to the two encumbrances, to his mother-in-law, and on August 19, 1936, had her deed the property to him.

Within three to five years after the loan was made, and after respondent failed to receive her interest payments, respondent went to appellant's office and demanded her money. She testified that when she told appellant that he had promised to return her money after three years and that that time had elapsed, appellant stated: "You know, I put you on a second mortgage." That she replied: "A second mortgage!" Her testimony continues as follows: "I told him I was dumb and did not know nothing, but I never would have let him have the money if I knew he put me on a second mortgage. 'Well,' he said, 'It is as good as gold, Mrs. Kornbau,' he said, 'You will get every cent of your money,' he said, 'I will make it a first mortgage after this.' "

For some period after this conversation respondent received intermittent payments of interest. For some two years thereafter she made frequent but unsuccessful attempts to see appellant but his office always said he was out of town. About July, 1937, she was advised by a banking adviser to have an attorney by the name of Fiore investigate the matter. Fiore talked with appellant and nothing was done thereafter by him. In that year respondent's husband died and she was quite ill for about two years and unable to attend to her affairs.

In July of 1937 appellant resumed interest payments, and she received irregular payments until October of 1941. In the meantime, in 1939, an event occurred which casts some light on the relationship of the parties. Sometime in that year respondent telephoned to appellant and told him that she wanted her money back, and that if it were not repaid she was going to place it in the hands of the Associated Charities

for collection. Appellant, she testified, got quite excited and told her that he would come right out to her home to discuss it with her. When he arrived he stated: "Well, you can go see the Associated Charities, but do not tell them you got this money with me," and then he stated that she could go to the Charities and they would give her a little and that he would give her a little, and that she should assign her claim to the money to someone else. This respondent refused to do.

In September of 1941, respondent employed an attorney by the name of Eugene Raggett to help her. Raggett discovered that the appellant held the deed to the property. As a result of a conference between Raggett and appellant, appellant, on September 24, 1941, deeded the property to respondent, subject, of course, to the existing encumbrances.

On August 19, 1942, appellant instituted foreclosure proceedings on behalf of Mrs. Easom. The foreclosure sale was at first restrained by the trial court, but the restraining order was later dissolved because of respondent's inability to furnish a bond. At the foreclosure sale, appellant's office associate bought the property in for Mrs. Easom for the amount of her note secured by the first deed of trust. Thus, respondent lost any interest she had under her deed or her deed of trust. This action was then instituted on September 16, 1942.

On these facts the trial court found, among other things, that appellant had breached a continuing oral trust, found that the action was not barred by the statute of limitations, and gave judgment against appellant for $1,696.10.

Appellant's main contention is that the cause of action is based on fraud, and that the complaint and evidence show that it was barred by section 338, subdivision 4, of the Code of Civil Procedure. Appellant points out that the complaint alleged, and respondent testified, that she first learned that her money had been invested in a second mortgage not later than 1936, yet did not institute this action until 1942. He also emphasizes the evidence that in 1937 attorney Fiore investigated the matter for respondent. The answer to this contention is that the action is not entirely based on the theory of fraud. While it is true that from the allegations of the complaint and the evidence a cause of action based on fraud can be spelled out, that is not the only cause of action pleaded, and proved. Respondent pleaded all the facts, substantially as set forth above, and the court, on competent evidence, found those facts to be true. Those facts show not only fraud, but

also the breach of an oral voluntary continuing trust. ▪ It is, of course, the rule that in the case of a voluntary trust the period of limitation commences to run from the time the beneficiary acquired knowledge that the trust had been repudiated. (See cases collected 25 Cal.Jur., p. 271, § 133.) If a voluntary trustee does not unequivocally repudiate the trust but continues to act in harmony with it, the statute of limitations remains inoperative until the trust is repudiated. (See cases collected 34 Am. Jur., p. 140, § 175, et seq.)

The real questions in this case are first, whether appellant was a voluntary trustee of respondent's money, and, second, if so, when did he unequivocally repudiate the trust so as to start running the statute of limitations?

That the evidence shows that a voluntary express trust was created seems too clear for controversy. Section 2216 of the Civil Code provides that a "voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another." Section 2219 of the Civil Code provides that "Every one who voluntarily assumes a relation of personal confidence with another is deemed a trustee, within the meaning of this chapter, not only as to the person who reposes such confidence, but also as to all persons of whose affairs he thus acquires information which was given to such person in the like confidence, or over whose affairs he, by such confidence, obtains any control." Section 2220 provides that a trust in real or personal property "may be created for any purpose or purposes for which a contract may be made," while section 2221 provides, subject to certain exceptions not here involved, that "a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty:

"1. An intention on the part of the trustor to create a trust; and,

"2. The subject, purpose and beneficiary of the trust."

Section 2222 provides, subject to the same limitations, that a voluntary trust is created as to the trustee, "by any words or acts of his indicating, with reasonable certainty:

"1. His acceptance of the trust, or his acknowledgement, made upon sufficient consideration, of its existence; and,

"2. The subject, purpose, and beneficiary of the trust."

▪ No particular form of words need be used to establish a trust. (*Booth* v. *Oakland Bank of Savings,* 122 Cal. 19 [54 P. 370]; *Lefrooth* v. *Prentice,* 202 Cal. 215 [259 P. 947].)

■ Respondent delivered her funds to appellant to invest. It is true that she did not deliver them intending title to pass to appellant. There is no showing that appellant was to hold title to the fund or to the security invested in as trustee for respondent, as normally would be true in order to create a trust. However, passage of title is not an indispensable element in the creation of a trust. It may be created by reason of the relationship of the parties. In *Feeny* v. *Smiley,* 115 Cal.App. 597, 599 [2 P.2d 220], this thought is expressed as follows:

"Appellants claim that to establish a trust relationship there must be a transfer of the legal title to the trustee. This is not the law. A trust may be established in many ways. It may be established where the bond between the parties is merely one of friendship. (25 Cal.Jur. p. 130; *Palladine* v. *Imperial Valley F. L. Assn.,* 65 Cal.App. 727 at 745 [225 P. 291].)"

■ In the instant case, if a confidential relationship had not existed between the parties, there might be little basis for holding that there was an oral trust. But a confidential relationship of the highest character here existed. Appellant had been respondent's attorney for many years. The point that the relationship between attorney and client is of a fiduciary character (*Clark* v. *Millsap,* 197 Cal. 765 [242 P. 918]), and that such relationship is highly confidential, need not be labored. ■ It follows that under sections 2216 and 2219 of the Civil Code, *supra,* a trust was created, and that when appellant took respondent's savings, promising to invest her money safely, and to return it with interest within three to five years, he assumed toward the respondent the duties of a trustee. That he failed in his duty as trustee cannot be seriously doubted. In fact, appellant does not challenge the sufficiency of the evidence to support the findings. The evidence shows that appellant invested his client's money in a security that was actually in default at the time, and practically worthless. He did not inform her of the nature of the investment, or that he had waived principal payments, and, when she inquired and found the money was invested in a second deed of trust, he placated her by representing the money was safe, and represented that he would make it a first deed of trust. He then purchased the first deed of trust for another client, gave respondent a valueless title to the property, and then had his other client foreclose her first deed of trust, cutting re-

spondent out of any interest in the property and of any chance of recovering her investment. He accepted a fee from Bernell and represented both Mrs. Easom and respondent, whose interests were conflicting. ▮ The statement made to respondent not later than 1936 that he had invested in a second mortgage did not constitute a repudiation of the trust. Thereafter he continued to assume the duties of a trustee, and, in fact, paid respondent interest until as late as 1941. It was not until the foreclosure that there was clear repudiation of the trust. Under such circumstances, the action was brought in time.

▮ Respondent also argues that even if the action be considered as one for fraud, the existence of the confidential relationship would excuse any failure to discover the facts constituting the fraud. In this connection the trial court specifically found that the statute of limitations had not run. That is, of course, a mixed finding of fact and law. (16 Cal. Jur. p. 633, § 225.) In view of the conclusion that we have come to, that the statute had not run on the cause of action for breach of the oral continuing trust, it is not necessary to determine whether the cause of action for fraud was barred.

▮ This disposition of the case also disposes of appellant's contention that his demurrer based on subdivision 4 of section 338 of the Code of Civil Procedure should have been sustained. Such argument would only be pertinent if the cause of action was based on fraud. As already pointed out, the allegations and proof also showed breach of an oral continuing trust.

▮ The last point urged by appellant is that the evidence discloses that the cause of action was barred by an accord and satisfaction. This contention is based on the evidence that respondent, through attorney Raggett, accepted from appellant a deed to the property. In his opening brief, page 10, appellant argues "However, in lieu of her money and on advice and through the agency of her attorney, Mr. Raggett, plaintiff accepted from defendant a deed to the premises." There is no reference in the brief to any evidence in the record showing any such agreement, and a reading of the record shows that there is no evidence therein to support the statement above quoted. An accord, by statutory definition (Civ. Code, § 1521) is "an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled," and a "satis-

faction'' is defined by section 1523 as the ''Acceptance by the creditor, of the consideration of an accord.'' The record is entirely silent that any such agreement was entered into.

Moreover, accord and satisfaction is a special defense, which must be specially pleaded. (See cases collected 21 Cal. Jur. p. 136, § 91) and no such defense was here pleaded.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.