Filed 12/21/22  Von Borstel v. Von Borstel CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| DOLORES VON BORSTEL, | B311420 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STPB06659) |
| v. | |
| MONIQUE VON BORSTEL, as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Brenda J. Penny, Judge.  Reversed with directions.

Sandra J. Applebaum; Salvatore Coco for Plaintiff and Appellant.

FEIG Law Firm and Scott Feig for Defendant and Respondent.

―――――――――――――

This appeal arises out of an intrafamily dispute over the validity of an alleged amendment to a living trust. Beneficiary Dolores Von Borstel filed a verified petition seeking to compel beneficiary and trustee Monique Von Borstel to distribute certain real and personal property to Dolores[1] consistent with the amendment, which Dolores alleged had been signed, but lost.

The trial court granted Monique's motion for judgment on the pleadings, holding that Probate Code[2] section 15206's requirement that a trust relating to real property be in writing and signed barred Dolores's petition, regardless of Dolores's contention that the amendment was a lost document and that extrinsic evidence should be admitted to prove that it was signed.

We conclude Dolores stated sufficient facts to state a claim that the trust amendment was a lost document. The crux of her petition was that there *was* in fact a written and signed document, but that it could not be located. We reject Monique's alternative contentions that the order granting the motion for judgment on the pleadings is nonappealable and that the petition was otherwise inadequate. We therefore reverse the judgment and vacate the order granting the motion for judgment on the pleadings.

---

[1] We refer to the Von Borstels by their first names for the sake of clarity; we intend no disrespect.

[2] All subsequent undesignated statutory references are to the Probate Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Consistent with the applicable standard of review, we draw our statement of facts from the allegations of Dolores's July 2018 petition and other matters properly subject to judicial notice. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264.) "[W]e treat as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Freeman v. San Diego Assn. of Realtors* (1999) 77 Cal.App.4th 171, 178, fn. 3; *Fontenot*, at pp. 264–266.) Further, we may examine written instruments attached to a pleading and properly incorporated therein by reference, treating the pleader's allegations of their legal effect as surplusage. (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1064.)

Charles Von Borstel executed an inter vivos declaration of trust in 2008. The trust, appended to the petition as an exhibit, specified that real property located in Hacienda Heights, California (the Hacienda Heights property), was to be held in trust and upon Charles's death, his wife Dolores, would reside there until her death or whenever Dolores agreed the trustee could sell the home. At that point, the balance of the trust estate was to be distributed to Charles's three children from another marriage, Monique, Charles, and Carl, in equal shares. Upon Charles's death, Monique was to become his successor trustee.

Article II of the trust reserved the power to amend and revoke through the following methods: "During the lifetime of the Trustor, this Trust may be revoked in whole or in part by the Trustor delivering written notice to the Trustee. In the event of such revocation, the entire Trust Estate or the portion affected by the revocation, shall revert to the Trustor retaining its character as separate property. During the lifetime of the Trustor this

3

Trust may be amended in writing by written amendment thereof delivered to the Trustee."

According to Dolores's petition, Charles executed a second amendment to the trust on December 6, 2016, an unsigned version of which was appended to the petition as an exhibit. The exhibit, denominated "Second Amendment to the Charles Von Borstel Living Trust" and bearing signature lines for Charles as settlor and trustee and a notary block, purported to revoke a prior 2012 amendment, and amend and restate the 2008 declaration of trust so as to provide that the Hacienda Heights property be held in "Joint Tenancy with [Dolores] and no matter how the title is now held, (if that property is in my Trust it is a mistake) it is to be specifically given and bequeathed to Dolores . . . as her sole and separate property."[3] The amendment further provided that at Charles's death additional real property in Pico Rivera would be given and bequeathed to Monique. It also stated that Charles's rights to real property in Nevada should be in title to Leisure Time, Inc., and that all real property and "all interest I own in Leisure Time, Inc." was given and bequeathed to Dolores. Finally, the amendment specified that the residue of Charles's estate, including other business and real property interests, be given to his three children. The amendment also indicated Charles "retained the power to alter, amend, revoke or terminate the Declaration of Trust."

---

[3] Dolores filed a declaration in support of her petition averring that, prior to marrying Charles, she owned the Hacienda Heights property, and then, upon their marriage, she placed Charles on title to the property in joint tenancy.

4

The document was prepared by Attorney Allen Brown and executed on December 6, 2016, at Charles and Dolores's residence before Brown and his secretary, a notary public. Brown and his secretary took the original and left the unsigned version which she later attached to her petition, which bore the inscription on the title page " 'Copy/Signed 12/6/16.' " Charles passed away on December 28, 2016.

Dolores, through counsel, demanded that Brown (who had indicated he now represented Monique as trustee) produce the signed amendment but, as of the time of filing the petition, six months had passed and Brown was unable to locate the document. Monique refused to distribute the Hacienda Heights property and the corporate stock, as contemplated by the second amendment, because she had not seen an executed copy of the second amendment. Thus, Dolores requested that the trial court determine the second amendment's validity, order Brown to produce the original, signed version of the second amendment, or declare that the unsigned copy of the second amendment annexed to the petition was, in fact, signed, and that the real and personal property at issue must be transferred to Dolores. In a separate declaration accompanying her petition, Dolores stated that, without the notarized version and signature, she could not record the document and "terminate the joint tenancy."

In November 2018, Monique filed a response to the petition requesting that it be denied for failure to plead a cause of action. The response elaborated that Monique lacked sufficient knowledge to admit or deny the existence of the signed second amendment.

Nearly two years later, Monique moved for judgment on the pleadings, arguing that the petition should be dismissed without

leave to amend for failing to state a claim. More specifically, Monique claimed that because the second amendment attached to the petition was "unsigned," and because Dolores admitted that "there only exists an unsigned" version of the second amendment, Dolores's request that it be deemed signed could not be granted without violating section 15206, subdivision (b)'s rule that an alleged trust in relation to real property is " 'not valid' " unless in writing and signed by the trustee or settlor. Although Dolores might argue that, under Evidence Code section 1523, oral testimony regarding the contents of a document is permitted under certain circumstances, there were no authorities, according to Monique, providing that the evidentiary provision could be utilized to overcome section 15206's signed writing requirement.

As a separate alternative ground, the motion further alleged Dolores's petition failed to allege two necessary elements of trust formation—trust intent and trust purpose—as to the second amendment. Per Monique, because Dolores did not state that Charles intended to amend the trust, and instead stated that Charles intended to " 'restate the joint tenancy' " between Charles and Dolores, the petition's allegations of trust intent and purpose were lacking.

In response, Dolores's counsel filed three declarations, one from Brown, another from a notary public, and the final one his own. Brown attested that he served as Charles's attorney and had prepared both the 2008 trust and the two amendments. According to Brown, the second amendment attached to Dolores's petition was the one he "prepared and took" to Charles and Dolores's residence for signature, and that Charles signed the amendment in the presence of the notary public and himself. Brown reviewed the handwriting on the exhibit's cover page

6

indicating the document was a copy and determined it was his. Brown left this copy with Dolores, but took the original with him and had been unable to locate it or the rest of his file, despite searching several locations. Although Brown was initially unable to recall the notary public's name, he eventually located the name of the notary public and obtained a copy of the notary book showing that the second amendment was signed.

The notary public's declaration confirmed that he notarized the second amendment, and that he and Brown witnessed Charles sign the second amendment, the same document appended to Dolores's petition. The declaration attached a copy of a page from the notary public's journal confirming that Charles signed the second amendment on December 6, 2016.

Finally, Dolores's counsel's declaration documented his efforts to seek the original signed second amendment. As "points and authorities in objection" to the motion, counsel argued that the petition pertained to a lost document, not a document that was never signed, thereby falling outside the ambit of the statute of frauds. Counsel asserted that oral testimony of the content of the second amendment was admissible under Evidence Code section 1523, subdivision (c), and that secondary evidence, such as the unsigned copy of the second amendment, could prove the contents of the signed version pursuant to Evidence Code section 1521, subdivision (a). Further, Evidence Code section 1413 allowed Brown and the notary public to authenticate the second amendment, while Evidence Code section 1451 provided that a notary's certificate of acknowledgement may serve as "prima facie evidence" of the facts in the certificate and the genuineness of the signature of each person by whom the writing purports to have been signed. Counsel thus argued that, consistent with these

7

provisions, the propriety of admitting the "lost document" was an issue for trial.

Monique filed a reply brief contending that because the declarations included with Dolores's opposition were extrinsic evidence and not the proper subject of judicial notice, the court could not consider them. Further, the legal arguments presented in Dolores's counsel's declaration should be disregarded because legal arguments were only properly presented in a memorandum of points and authorities.

The next day, Dolores filed a pleading with the caption "objection to motion for judgment on the pleadings," stating that she objected to the motion because the petition concerned "a lost document which was signed" as her three accompanying declarations demonstrated.

At a December 2020 appearance, the court announced its tentative decision to grant the motion for judgment on the pleadings, concluding that the purported second amendment to the trust did not satisfy the requirements of section 15206, and that Dolores had not provided adequate basis to treat the second amendment as a lost document. The court heard argument from the parties, during which Dolores's counsel reasserted that the amendment at issue was a "signed" but "lost document." The court adhered to its tentative ruling, granting the motion without leave to amend, thereby "dispos[ing] of [the] petition."

In February 2021, Dolores filed a notice of appeal from the "[j]udgment on the pleadings (CCP sec. 438) as to [the] entire Petition, without leave to amend."[4] Where asked to specify the

---

[4] The record contains no copy of any judgment, and the parties have not represented to us that one was entered after the notice

8

date of the order or judgment being appealed, Dolores specified "12/10/2020 (Notice of Ruling date)." Her subsequently filed case information statement attached the December 10, 2020 notice of ruling, which included the minute order from the December 2020 appearance indicating that Monique's motion for judgment on the pleadings was granted and "dispos[ing] of the pleadings."

## DISCUSSION

### A. Appealability

Before turning to the substance of the appeal, we address Monique's contention that Dolores's appeal from the "judgment on the pleadings" must be dismissed because no judgment has been entered and an order granting a motion for judgment on the pleadings is not in itself appealable.

Where, as here, a matter is raised through a direct appeal, we have jurisdiction based only upon an appealable order or an appealable judgment. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) Because an appealable judgment or order is an indispensable prerequisite to our review, "this court is obligated to review the question of appealability. [Citations.]" (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1292.) "Accordingly, if the order or judgment is not appealable, the appeal must be dismissed. [Citation.]" (*Canandaigua Wine Co.,*

---

of appeal was filed. In addition, we take judicial notice of the Los Angeles County Superior Court's online docket for this case. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a); *Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 872, fn. 3 [taking judicial notice of superior court's docket entries to determine disposition of action].) The superior court's docket for this case indicates that no judgment has been entered.

9

*Inc. v. County of Madera* (2009) 177 Cal.App.4th 298, 302.) The right to appeal is entirely statutory. (*Rubin v. Western Mutual Ins. Co.* (1999) 71 Cal.App.4th 1539, 1544.)

Here, Dolores purports to appeal from a "[j]udgment on the pleadings" under Code of Civil Procedure section 438. Her opening brief further states that she appeals under Code of Civil Procedure sections 438 and 577. However, Code of Civil Procedure section 438 merely defines the procedures for a motion for judgment on the pleadings and provides no statutory authority to appeal, while Code of Civil Procedure section 577 merely provides the definition of a judgment. Therefore, neither provision grants us jurisdiction to hear this appeal. Even so, because we must construe Dolores's notice of appeal liberally, in favor of its sufficiency, our inquiry does not end there. (*Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1455.)[5]

"The primary statutory basis for appealability in civil matters is limited to the judgments and orders described in section 904.1 of the Code of Civil Procedure, which essentially codifies the 'one final judgment rule' and provides that only final judgments are appealable." (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645.) An appeal lies from a judgment

---

[5] For the same reason, although Dolores identified the date of the notice of ruling as the date of the order being appealed from, a commonsense reading of the notice of appeal's description of the order as "[j]udgment on the pleadings," as well as the subsequently filed civil case information statement's appending the minute order from the December 2020 appearance, make "*reasonably* clear what [Dolores] was trying to appeal from." (*In re Joshua S.* (2007) 41 Cal.4th 261, 272, italics added.)

of dismissal entered on an order sustaining a demurrer or granting a motion for judgment on the pleadings. (Code Civ. Proc., § 904.1, subd. (a)(1); *Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1212–1213 (*Ellerbee*).) However, there is no right to appeal from the order itself. (*Ellerbee*, at pp. 1212–1213.)

Despite the trial court's order granting Monique's motion, without leave to amend, thereby "dispos[ing] of [the] petition," no judgment of dismissal has, to date, been entered in this case. Thus, Monique is correct that, in any ordinary civil case, Dolores might have appealed from a nonappealable order. (*Ellerbee*, *supra*, 187 Cal.App.4th at pp. 1212–1213.)[6]

However, this matter originated in probate court from a beneficiary's petition concerning trust administration. (§ 17200; see *Leader v. Cords* (2010) 182 Cal.App.4th 1588, 1595 [petition seeking distributions construed as § 17200 petition]; see also *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 [substance, rather than form, governs appealability].) The right to appeal in probate matters is governed by Code of Civil Procedure section 904.1, subdivision (a)(10), which provides:

---

[6] Although we do not rest our conclusion on this ground, Dolores correctly points out that, as several of Monique's cases reflect, this rule typically only applies where the grant of a challenge to the pleadings only partially resolves the case. (See *Ellerbee*, *supra*, 187 Cal.App.4th at pp. 1212–1213; *Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1132.) Where the order is case dispositive, yet no appealable judgment has been entered, courts of appeal generally deem the order sustaining the motion or demurrer to incorporate a judgment of dismissal, and look to the merits of the appeal. (See *Kruss v. Booth* (2010) 185 Cal.App.4th 699, 712, fn. 12 [reasoning that this is a "better course" than dismissing].)

11

"An appeal . . . may be taken from any of the following: [¶] . . . [¶] From an order made appealable by the provisions of the Probate Code . . . ." Thus, "[i]n probate matters, there is no right of appeal unless the Probate Code specifically authorizes an appeal from the challenged order. [Citation.]" (*Estate of Dito* (2011) 198 Cal.App.4th 791, 799, fn. 5.) Because the instant appeal arises from a "final order" of the probate court disposing of, by way of sustaining a motion for judgment on the pleadings without leave to amend, a petition to compel the trustee to make trust distributions (i.e., a section 17200 petition), the order is itself appealable (§ 1304, subd. (a); *Johnson v. Kotyck* (1999) 76 Cal.App.4th 83, 86 [order of dismissal following sustaining of demurrer without leave to amend construed as a denial of § 17200 petition]).[7]

We thus proceed to consider the appeal's merits.

### B. Standard of review

On appeal from a judgment on the pleadings, "the standard of review is the same as for a judgment of dismissal following the sustaining of a general demurrer." (*Orange Unified Sch. Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 764.) "[W]e review the [pleading] de novo to determine

---

[7] Even were a final judgment required, we would liberally construe the order from which Dolores appeals to incorporate a subsequent judgment of dismissal. (*Kruss v. Booth*, *supra*, 185 Cal.App.4th at p. 712, fn. 12; see *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1263, fn. 3.) Because Monique has briefed the appeal on the merits, she has not been prejudiced, and no purpose would be served by dismissing the appeal so that Dolores could secure a final judgment. (*Estate of Dito*, *supra*, 198 Cal.App.4th at p. 799.)

whether it alleges facts stating a cause of action on any possible legal theory. [Citation.] ' " 'We treat the [motion] as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " [Citations.]' [Citation.] 'Further, "we give the [pleading] a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490.) We afford the petition a liberal construction with a mind toward " ' "attain[ing] substantial justice among the parties." ' " (*York v. City of Los Angeles* (2019) 33 Cal.App.5th 1178, 1193.)

A motion for judgment on the pleadings, like a demurrer, is " 'not the appropriate procedure for determining the truth of disputed facts.' [Citation.]" (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.) Such a motion, however, must be granted if the petition and judicially noticeable facts establish a complete defense. (*Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152.)

**C.    The petition adequately pleaded a lost trust amendment**

Dolores contends that the trial court erred in granting Monique's motion for judgment on the pleadings by refusing to recognize her claim that she could compel the trustee to make distributions based upon a lost, but signed, trust document concerning real property. Monique retorts that there is no authority recognizing that an allegation of a lost trust document may overcome section 15206's requirement that trusts concerning real property be contained in a signed writing. Monique also contends that Dolores's statutory arguments were waived—or alternatively that Dolores invited error—when she failed to cite to them below outside of the context of her counsel's declaration.

13

We conclude that Dolores did not forfeit her claims or otherwise invite error, and further that her petition adequately pleaded a lost trust amendment.

### 1. *Governing law*

The statutory requirements pertaining to the creation and validity of trusts are set forth at section 15200 et seq. Relevant here, section 15206, titled "Statute of Frauds," provides that "[a] trust in relation to real property is not valid unless evidenced by one of the following methods: (a) By a written instrument signed by the trustee, or by the trustee's agent if authorized in writing to do so. (b) By a written instrument conveying the trust property signed by the settlor, or by the settlor's agent if authorized in writing to do so. (c) By operation of law."

Evidence Code section 1521, subdivision (a) provides that "[t]he content of a writing may be proved by otherwise admissible secondary evidence," except when "[a] genuine dispute exists concerning material terms of the writing and justice requires the exclusion" or when "[a]dmission of the secondary evidence would be unfair." Evidence Code section 1523 governs admission of oral testimony regarding the contents of a writing, providing, in pertinent part, that such testimony is admissible "if the proponent does not have possession or control of the original or a copy of the writing and . . . [¶] . . . [n]either the writing nor a copy of the writing was reasonably procurable by the proponent by use of the court's process or by other available means." (Evid. Code, § 1523, subd. (c)(1).) Evidence Code section 1413 further provides that "[a] writing may be authenticated by anyone who saw the writing made or executed, including a subscribing witness." Finally, Evidence Code section 1451 specifies that "[a] certificate of the acknowledgment of a writing other than a will, or a

14

certificate of the proof of such a writing, is prima facie evidence of the facts recited in the certificate and the genuineness of the signature of each person by whom the writing purports to have been signed."

### 2. *Forfeiture/invited error*

Monique contends that Dolores has forfeited her appellate arguments invoking various provisions of the Evidence Code relating to lost documents because she only cited to these provisions in her counsel's declaration in opposition, rather than in a proper memorandum of points and authorities. Monique also claims, for the same reasons, that Dolores invited any error in the trial court's decision. While we do not condone Dolores's including argument within her counsel's declaration rather than a memorandum of points and authorities (especially given the attendant difficulties imposed upon a trial court attempting to discern her legal arguments),[8] we conclude this should not defeat Dolores's ability to raise these provisions on appeal.

Generally, under the principle of forfeiture, we do not consider challenges to rulings if the complaining party failed to lodge an objection in the trial court. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 177–178.) However, we are typically reluctant to apply forfeiture when reviewing a pleadings-stage

---

[8] We agree with the court in *In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 30, fn. 3, that the "sloppy practice" of including argument in declarations should stop: "Even at its most benign, it is a practice that forces the trial and appellate courts, and opposing counsel, to sort out the facts that are actually supported by oath from material that is nothing more than the statement of an opinion ostensibly under oath. . . . The proper place for argument is in points and authorities, not declarations."

15

dismissal based upon failure to state a claim, as in the appeal at bar. (See, e.g., *Dudley v. Department of Transportation* (2001) 90 Cal.App.4th 255, 259 [party contesting grant of motion for judgment on pleadings may change theory on appeal]; *Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 629–630 [distinguishing forfeiture argument raised in pleadings context from posttrial posture].)

The application of the forfeiture rule in all of Monique's purportedly contrary cases stemmed from orders occurring at more advanced stages of the proceedings (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488 [argument waived where not raised in opposition to summary judgment motion]; *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 332 [argument not raised at trial waived for appellate purposes]; *Carian v. Agricultural Labor Relations Bd.* (1984) 36 Cal.3d 654, 668, fn. 6 [similar, as to posthearing posture before administrative law officer]), and we therefore decline to follow them.

Procedural posture aside, applying forfeiture is otherwise inappropriate under the circumstances. Even where a legal argument was not raised in the trial court, we have discretion to consider it when the theory raised for the first time on appeal is, as here, a pure question of law applied to undisputed facts. (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 699–700.) We may also, in our discretion, excuse any default in the interest of justice. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [reviewing courts have discretion to excuse forfeiture].)

The instant case calls for the exercise of that discretion. Monique addressed some of the statutory provisions at issue in her moving and reply papers and therefore appears to have had

16

ample notice that Dolores intended to invoke them, and thus has not been prejudiced. Applying the forfeiture rule in this context—where the proper arguments were advanced but presented in an improper form[9]—would unfairly punish the client for an attorney's inadvertent failing. (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567 [" 'fairness is at the heart of a waiver claim' "].) Moreover, the admittedly unspecific argument that Dolores did muster in the pleading she titled an "objection" to the motion, and then again at oral argument—that the second amendment should be treated as a lost document—was wholly consistent with the arguments she advanced, by way of her counsel's declaration, under these statutory provisions. (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1511 [excusing failure to cite specific statutory provision where import of appellant's argument was consistent with it].)

Nor are we persuaded that Dolores's failure to cite these provisions invited error by the trial court. "Under the doctrine of

---

[9] To the extent Monique contends that we cannot consider the declarations because they were not properly filed below, we disagree. While ample authority supports the proposition that including legal argument within a declaration is improper (see, e.g., *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 239, fn. 2), Monique cites no authority to the effect that a clerk cannot even *file* declarations without a separate memorandum of points and authorities. Because the declarations were filed and are therefore properly included within the clerk's transcript, we consider them for the limited purpose of addressing Monique's forfeiture and invited error arguments. (*Tibbets v. Robb* (1958) 158 Cal.App.2d 330, 337 [clerk's transcript properly includes documents in judgment roll pertinent to disposition of the appeal].)

17

invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212.) The doctrine typically applies to situations where a litigant has made a "deliberate tactical choice" inducing error. (*Pioneer Construction, Inc. v. Global Investment Corp.* (2011) 202 Cal.App.4th 161, 169.)

For instance, the sole case that Monique cites as supportive of her "invited error" argument, *San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 436, actually compels the opposite conclusion. In that case, a plaintiff appealing the sustaining of a demurrer for failure to state a claim on one cause of action and for governmental immunity on several other causes of action was suggested to have invited error because, after the court announced its ruling, plaintiff's counsel sought to clarify the scope of the immunity ruling. (*Ibid*.) After the court clarified the scope of its ruling, counsel expressed appreciation and replied, " 'Okay.' " (*Ibid*.) The Court of Appeal held that this was not invited error because plaintiff did nothing to "mislead the court" or otherwise "induce any error." (*Ibid*.) Here, as discussed above, Dolores's failure to cite certain Evidence Code provisions that are now at issue on appeal in a memorandum of points and authorities appears to have been a mere product of counsel's inadvertence. Thus, we cannot say that Dolores invited error. (*Pioneer Consruction., Inc. v. Global Investment Corp.*, *supra*, 202 Cal.App.4th at p. 169.)

### 3. *Sufficiency of the petition's lost document allegations*

Having disposed of Monique's procedural objections, we proceed to the merits. Assuming without deciding that the

18

second amendment was required to satisfy the provisions for a valid trust including the statute of frauds embodied at section 15206,[10] Dolores's petition adequately alleged that the amendment was a lost document, and section 15206's requirements did not otherwise bar this claim.

---

[10] We note that section 15400 et seq. separately governs amendments and revocations to a valid trust. A trust may be revoked by "compliance with any method of revocation provided in the trust instrument" (§ 15401, subd. (a)(1)) or in "a writing, other than a will, signed by the settlor . . . and delivered to the trustee during the lifetime of the settlor" (§ 15401, subd. (a)(2)). The provision governing modification specifies that "[u]nless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation." (§ 15402.) Therefore, when "the trust instrument is silent on modification, the trust may be modified in the same manner in which it could be revoked, either statutorily or as provided in the trust instrument." (*King v. Lynch* (2012) 204 Cal.App.4th 1186, 1192.) When the trust instrument "specifies how the trust is to be modified," however, that "method must be used to amend the trust." (*Id*. at pp. 1192–1193.) Section 15402 " 'recognizes a trustor may bind himself or herself to a specific method of . . . amendment of a trust by including that specific method in the trust agreement.' " (*King*, at p. 1193.) Here, because the 2008 trust specifically designates that amendments merely be "in writing" and "delivered to the Trustee," we harbor some doubt as to whether section 15206's signed writing requirement applies to a document clearly titled, and intended to be a, "[s]econd [a]mendment" to the trust. (*Balistreri v. Balistreri* (2022) 75 Cal.App.5th 511, 517, review granted May 11, 2022, No. S273909.) However, because this argument was not presented below, we proceed, as the parties do, on the assumption that section 15200 et seq.'s requirements apply to an amendment of this nature.

According to Monique, no authority recognizes that a lost, but allegedly signed,[11] trust document relating to real property can overcome section 15206's signed writing requirement. On the other hand, section 8223 recognizes that a lost *will* can be probated, while there is no analogous provision for the admission of lost *trust* documents. As such, she argues the motion was properly granted because the statute of frauds provides a complete defense to the petition's allegations. (*Cryolife, Inc. v. Superior Court*, *supra*, 110 Cal.App.4th at p. 1152.)

Dolores counters that her petition adequately alleged that she sought the process of the court to obtain a signed version of, or recognize, an otherwise valid trust amendment that was unable to be found despite a diligent search. According to her, she was entitled to seek such recourse not only under several of the Evidence Code provisions cited above, but under *Estate of Duke* (2015) 61 Cal.4th 871, a case in which our Supreme Court recognized that "extrinsic evidence is generally admissible to correct errors in documents, *including donative documents other than wills*." (*Id.* at p. 887, italics added.)

Monique asserts that *Estate of Duke* was a case involving a lost will—not a lost trust—and therefore does not govern this question, especially given the absence of a section comparable to

---

[11] Monique repeatedly suggests that Dolores's petition sought a distribution based upon an "unsigned" amendment. To the contrary, and as we address in further detail below, the petition alleged that the amendment was signed, but that the signed copy could not be located. We assume, for the purposes of this analysis, the truth of those allegations. (*Rossberg v. Bank of America, N.A.*, *supra*, 219 Cal.App.4th at p. 1490.)

section 8223 applicable to trusts.  In our view, however, Monique reads *Duke* and section 8223 too narrowly.

The relevant sections of the Evidence Code, the Probate Code, as well as the extensive common law history recognizing that claims of lost trust documents may be proven by extrinsic evidence demonstrate that Dolores's petition was not legally deficient. Section 8223 provides in relevant part that: "[t]he petition for probate of a lost or destroyed will shall include a written statement of the testamentary words or their substance." This language merely governs the prerequisites for a petition for probate of a lost or destroyed will, and in no way excludes petitions for other types of lost documents.  Further, Monique neglects that *Estate of Duke* cited several Court of Appeal cases involving lost trust documents with approval after recognizing that extrinsic evidence can be admitted to fill gaps in donative documents "other than wills."  (*Estate of Duke*, *supra*, 61 Cal.4th at p. 887; see *Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586, 1603–1604 [irrevocable trust]; *Bilafer v. Bilafer* (2008) 161 Cal.App.4th 363, 368–369 [irrevocable trust]; *Ike v. Doolittle* (1998) 61 Cal.App.4th 51 [after trustors' deaths, reformation allowed to correct a drafting error].)

The absence of a statutory counterpart to section 8223 (enacted decades before *Estate of Duke* and the several trust cases it cites) applicable to trusts does not defeat Dolores's claim.  Section 15002, which falls at the outset of California's trust law among other provisions of general applicability (§§ 15000–15006 et seq.), supplies the default rule for cases involving trust administration where no statutory provision might directly apply, providing that:  "[e]xcept to the extent that the common law rules governing trusts are modified by statute, the common law as to

21

trusts is the law of this state." (See *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1072 [§ 15002 requires that California courts look not just to trust statutes, but the common law of trusts].)

Applying this section, courts have recognized their "broad[] equitable power[s]" to administer trusts, and modify and reform them to the extent necessary and consistent with the relevant common law authorities. (*Bilafer v. Bilafer*, *supra*, 161 Cal.App.4th at p. 368; *Ike v. Doolittle*, *supra*, 61 Cal.App.4th at p. 84.) In this context, "common law" is intended to mean "contemporary and evolving rules of decision developed by the courts in exercise of their power to adapt the law to new situations and to changing conditions." (Cal. Law Revision Com. com., Deering's Ann. Prob. Code (2022 ed.) foll. § 15002.)

Several cases, handed down over a broad swath of dates, reflect a general acceptance that trust documents may be treated as lost documents. (See, e.g., *Atkins Corp. v. Tourny* (1936) 6 Cal.2d 206, 216 [court has "full power" to physically restore voting trust document if lost]; *JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 684 ["long-standing" authority for recognizing lost documents permitted court to recognize lost deed of trust]; *Penny v. Wilson* (2004) 123 Cal.App.4th 596, 602 [unsigned copy of "trust split" document appropriately admitted into evidence]; *Osswald v. Anderson* (1996) 49 Cal.App.4th 812, 819 [assuming that Evidence Code's lost document provisions might apply to defeat statute of frauds argument related to lost trust document, but concluding they did not apply to the case based upon doubts about authenticity]; *Hall v. Crowley* (1909) 12 Cal.App. 30, 33 [original trust deed properly admitted where evidence showed it was executed and delivered by mortgagor and destroyed by fire]; Cf. *Hasshagen v. Hasshagen* (1889) 80 Cal.

514, 517–519 [statute of frauds applied to destroyed trust where alleged trust had fraudulent purpose].) Only some of these cases apply the general Evidence Code provisions that Dolores cites relating to lost documents. Thus, a wealth of case law supplements the relevant provisions of the Evidence Code invoked by Dolores,[12] together recognizing that evidence of a lost trust may, where fairness and justice requires, overcome section 15206's signed writing requirement. (§ 15002; Evid. Code, § 1521, subd. (a); *Hasshagen v. Hasshagen, supra*, 80 Cal. at p. 519.) Monique cites no common law authorities holding otherwise. (See *Estate of Giraldin, supra*, 55 Cal.4th at p. 1074 [absence of contrary common law source probative in interpreting trust law].)

Such a rule is consonant with the "pragmatic" approach we must take with respect to the statute of frauds, mindful of the purposes that the statute is supposed to serve. (*Jacobs v. Locatelli* (2017) 8 Cal.App.5th 317, 325.)[13] Specifically, " '[t]he

---

[12] Beyond her forfeiture arguments, Monique does not address the Evidence Code provisions that Dolores cites, or otherwise explain why they should not apply under these circumstances. In our view, these provisions necessarily govern the admissibility of extrinsic evidence proving the contents of the alleged lost trust as these proceedings continue, absent another contrary provision. (See Evid. Code, § 300 [provisions of Evidence Code apply to every superior court action unless excluded by statute].)

[13] Similar to the case at bar, that court noted that the statute of frauds was not "directly applicable" because plaintiff alleged that there was a written agreement, but he simply was not in possession of the agreement. (*Jacobs v. Locatelli, supra*, 8 Cal.App.5th at pp. 324–325.) However, the court went on to

23

Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made.  In brief, the Statute "was intended to guard against the perils of perjury and error in the spoken word."  Therefore, if after a consideration of the surrounding circumstances, the pertinent facts and all the evidence in a particular case, the court concludes that enforcement of the agreement will not subject the defendant to fraudulent claims, the purpose of the Statute will best be served by holding the note or memorandum sufficient even though it is ambiguous or incomplete.' " (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 770–771.)

Applying this principle, courts faced with a credible lost document claim typically construe the statute of frauds narrowly. (*Sunset-Sternau Food Co. v. Bonzi* (1964) 60 Cal.2d 834, 838 ["We must, of course, apply the California statute of frauds to a situation which is precisely covered by the language of the statute.  If the extent of coverage is unclear, however, we know of no policy reasons which compel a resolution of the ambiguity in favor of its wide application."]; see Rest.2d Contracts, § 137 [allegation of lost document generally trumps statute of frauds' "evidentiary purpose"]; Rest.2d Trusts, § 49 ["The loss or destruction of a memorandum does not deprive it of its effect as a satisfaction of the requirements of the Statute of Frauds, and oral evidence of its contents is admissible unless excluded by some

analyze the statute of frauds in connection with the issue of the identity of the parties to the agreement.

rule of the law of evidence."]; see *Estate of Giraldin*, *supra*, 55 Cal.4th at p. 1072 [Restatement of Trusts appropriately considered in interpretation of California trust law].)[14]

For these reasons, there is abundant authority recognizing the possibility of a lost trust document despite section 15206, and we have not been presented with persuasive reasons for departing from those precedents. Upon accepting that legal proposition, Dolores's petition is plainly adequate.

A proponent of a lost document's admission through secondary evidence must establish that a reasonable search has been made. (*Osswald v. Anderson*, *supra*, 49 Cal.App.4th at p. 819.) "Preliminary proof of the loss or destruction is required and it is committed to the trial court's discretion to determine whether the evidence so offered is or is not sufficient." (*Guardianship of Levy* (1955) 137 Cal.App.2d 237, 249.) Courts approach such evidence "liberal[ly]." (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1069.)

Once these requirements are met, the court may receive parol evidence as to the lost document's contents. (*Robinson v. Thornton* (1969) 271 Cal.App.2d 605, 612.) "[T]o establish the contents of a lost instrument . . . the evidence must show without reasonable doubt the substantial parts of the instrument."

---

[14] Some of these authorities are not exclusive to trusts. However, that section 15206 was largely derived from the general civil statute of frauds, adopted without amendment, suggests that it should be interpreted harmoniously. (See Cal. Law Revision Com. com., Deering's Ann. Prob. Code (2022 ed.) foll. § 15206 [indicating that provision merely restated Civ. Code, § 852 (not pertaining to trusts) and also was derived from Code Civ. Proc., § 1971 (relating to trusts)].)

(*Barcroft v. Livacich* (1939) 35 Cal.App.2d 710, 720–721; *Nicholson v. Tarpey* (1899) 124 Cal. 442, 447 [parol evidence must be "clear and certain" or otherwise frustrate the statute of frauds].) Only where a court determines "(1) [a] genuine dispute exists concerning material terms of the writing and justice requires the exclusion" or "(2) [a]dmission of the secondary evidence would be unfair" should secondary evidence be excluded. (Evid. Code, § 1521, subd. (a).)

The case law pertaining to the pleading requirements for a lost document (if any) is sparse. Courts to have examined the question have suggested that a plaintiff need only allege a lost, signed writing to defeat a statute of frauds argument. (*Rossberg v. Bank of America, N.A. supra*, 219 Cal.App.4th at p. 1503; see *Walsh v. Standart* (1917) 174 Cal. 807, 809–810 [tension between complaint's allegation that contract was signed and copy of partially unsigned contract appended to complaint created factual uncertainty as to applicability of statute of frauds to be assessed at trial].) The question of whether a lost document should be accepted is often a credibility issue reserved for trial. (See, e.g., *Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1063 [application of equitable estoppel to statute of frauds defense was issue for trial]; *Robinson v. Thornton, supra,* 271 Cal.App.2d at p. 612 [question was one of credibility]; *Estate of Moramarco* (1948) 86 Cal.App.2d 326, 333 [whether document qualifies as lost is fact question].)

Here, Dolores asserted in the petition that the second amendment was "executed" and that, despite making demands of the attorney who allegedly possessed the original signed version, and that attorney's searches over six months, Dolores had not received a copy. The inability to produce a signed copy was the

26

reason that Monique, as trustee, declined to make distributions under the second amendment. Thus, Dolores requested that the court order Brown to produce a signed copy or declare that the second amendment was valid. Although Dolores did not expressly declare the amendment as "lost," the import of her allegations is as much. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 516 [appellate court affords facts liberal construction].) Most importantly, Dolores alleged that a diligent search for the signed document was made and had not yet borne fruit. (*Osswald v. Anderson*, *supra*, 49 Cal.App.4th at p. 819.)

These allegations, accepted as true, were amply sufficient to withstand a motion for judgment on the pleadings despite Monique's statute of frauds argument. (*Rossberg v. Bank of America, N.A.*, *supra*, 219 Cal.App.4th at p. 1503.) While it remains possible that the evidence may bear out that the second amendment fails to satisfy the prerequisites for a lost document, disposing of the petition at the pleadings stage was inappropriate under these circumstances.[15]

---

[15] In this regard, we decline Dolores's request that we "direct" the trial court to consider whether the second amendment is a lost document in the event a summary judgment motion is filed. Setting aside that this request was raised in the first instance in Dolores's reply brief (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 987 [arguments raised for first time in reply are forfeited]), we have complete faith in the trial court's abilities to properly address any hypothetical summary judgment motion in a manner consistent with this opinion.

As such, the trial court's conclusion that Dolores's petition insufficiently alleged that the second amendment was a lost document was erroneous.[16]

## D. The petition adequately pleaded trust intent

Monique further contends that, if we conclude the trial court erred in sustaining her motion on the rationale relied upon below, the petition nonetheless failed because Dolores failed to specifically allege a trust intent and trust purpose for the second amendment. Instead, the petition stated that Charles's intent was to create a joint tenancy, not to create a trust. Dolores points out that Monique does not contend the petition insufficiently alleged that the 2008 trust lacked trust purpose and the petition is no more specific as to the second amendment. Moreover, Article II of the trust provided that Charles could freely amend and revoke provisions of the trust. Regardless, both Dolores and Monique appear to agree that, because Monique raised this argument in her moving papers and the trial court never addressed it, we must remand the case for the trial court's consideration of the argument in the first instance.

At the outset, we disagree that we must remand to the trial court so that it may first consider this issue. In reviewing an order granting judgment on the pleadings, we "independent[ly]" review the sufficiency of the pleading and affirm if any ground

---

[16] Because we conclude that the existing petition on its own sufficed to allege a lost document, we need not address Monique's further argument that Dolores failed to follow required procedures for seeking judicial notice of the declarations that she submitted in opposition to Monique's motion for judgment on the pleadings. Those declarations play no role in our analysis of the merits.

28

raised in the motion is well taken, even if we disagree with the trial court's rationale or the trial court did not reach the dispositive issue. (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 13; *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 187 [judgment on the pleadings "will be affirmed if it is proper on any grounds stated in the motion, whether or not the trial court relied on any of those grounds"].) Therefore, we are obligated to reach the issue even though the trial court did not formally reach it. Because the parties have provided no contrary authority establishing that remand is required under the circumstances (see, e.g., *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [party must support appellate claims with citations to authority]), we proceed to address the substance of Monique's arguments and conclude they lack merit.

As noted, the elements of trust formation are set forth at section 15200 et seq. They include: (1) trust intent, (2) trust property, (3) trust purpose, and (4) a beneficiary. (§§ 15201–15205; *Chang v. Redding Bank of Commerce* (1994) 29 Cal.App.4th 673, 684.) Monique focuses her arguments solely on trust intent, and, to a lesser extent, trust purpose, arguing that Dolores's petition's allegations were inadequate because the declared purpose and intent of the second amendment was to create a joint tenancy, not a trust.

As to trust intent, the requirement is that a settlor must properly manifest an intention to create a trust. (§ 15201; *Aguilar v. Aguilar* (2008) 168 Cal.App.4th 35, 39.) As to trust purpose, a trust may be created for any purpose that is not illegal or against public policy. (§ 15203; *Estate of Berges* (1977) 76 Cal.App.3d 106, 110.) To the extent Monique maintains that

29

Dolores's pleading insufficiently alleged trust purpose for the same reason the pleading insufficiently alleged trust intent, her argument improperly conflates these two separate and distinct elements. The substance of Monique's argument is not that the second amendment was illegal or against public policy (thereby failing to establish a trust purpose), but rather that the only intent alleged was to create a joint tenancy. Thus, we construe her contentions as relating only to the petition's insufficient allegations of trust intent and disregard any implication that the petition also lacked sufficient allegations of trust purpose. (See *Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [points raised without separate argument or supporting authorities deemed forfeited or without merit].)

Assuming, again, for argument's sake, that the second *amendment* was required to meet the elements for trust *formation* (*ante*, fn. 10), the petition adequately alleged that the second amendment was formulated with trust intent. We first note that the pleading requirements for trust creation appear to have evolved over time. A body of early cases stringently adhered to a rule that the elements of trust formation, including trust intent, must be pleaded with specificity. (See, e.g., *Simpson v. Gillis* (1934) 1 Cal.2d 42, 50 [trust intent inadequately pleaded where appended lease documents negated trust intent]; *Lezinsky v. Mason Malt Whisky Distilling Co.* (1921) 185 Cal. 240, 243 [alleged agreement to hold stock in trust sufficient]; *Milliken v. Valencia* (1920) 47 Cal.App. 16, 18 [mere allegation that property held "in trust" insufficient].)

Our Supreme Court has since recognized, however, that "general allegations" that a property is held " 'in trust' " may suffice under "modern rules of pleading." (*Altramano v. Swan*

30

(1942) 20 Cal.2d 622, 627–628; see *Fish v. Security-First Nat. Bank of Los Angeles* (1948) 31 Cal.2d 378, 389 ["modern tendency is to relax the strict requirements of trust pleadings"]; accord, *Estate of Gardner* (2010) 187 Cal.App.4th 543, 552.). Applying this relaxed standard, other cases have held that the inclusion of a written instrument indicating property is to be held in trust suffices to allege trust intent. (See *Moore v. Vandermast, Inc.* (1941) 19 Cal.2d 94, 98 ["[i]n the absence of clear and convincing evidence to the contrary, a written instrument is presumed to express the true intent of the parties"]). Some courts have even declined to require that the words "trust" or "trustee" be stated. (See *People v. Pierce* (1952) 110 Cal.App.2d 598, 605 ["to create a trust, . . . the words 'trust' or 'trustee' need not be used"].)

Thus, while it is clear that *some* allegation that a trust was properly formed (consistent with the elements of section 15200 et seq.) is necessary, there are no magic words. (See *Kornbau v. Evans* (1944) 66 Cal.App.2d 677, 684 ["[n]o particular form of words need be used to establish a trust"].) Provided that the pleading and its attachments do not negate one of those elements, a pleading will typically be upheld against a challenge of the nature that Monique advances.

Viewed in this light, we identify no infirmity in Dolores's petition. The alleged second amendment attached and incorporated into Dolores's petition by reference makes amply clear that Charles intended to create and/or modify a trust. (See *Davis v. Fresno Unified School District* (2020) 57 Cal.App.5th 911, 925, fn. 9 [assessment of pleading's adequacy includes attached exhibits].)

Specifically, a trust may be created where there is "[a] declaration by the owner of property that the owner holds the

31

property as trustee." (§ 15200, subd. (a).) A trust may also be created where there is "[a] transfer of property by the owner, by will or by other instrument taking effect upon the death of the owner, to another person as trustee." (§ 15200, subd. (c).) The second amendment is captioned as an amendment to a living trust, invokes the 2008 trust by name, designates Charles as trustee, retains Charles's power to alter or amend the trust going forward, restates portions of the 2008 trust, and designates, by way of amending a specified portion of the 2008 trust, that certain property be held in trust until Charles's death. By this document attached to and referenced by the petition, Charles plausibly evidenced an intention to create a trust under either of these subdivisions. Notably, Monique did not suggest that the petition failed to adequately allege the trust intent of the 2008 trust, which the second amendment merely sought to amend and restate.

The petition's text—and its specific allegation that Charles at least partially intended to create a joint tenancy through the second amendment—did nothing to negate the amendment's trust intent. As an initial matter, the amendment's clear text speaks for itself and we are required to treat the pleading's allegations as to its legal effect as surplusage. (*Burnett v. Chimney Sweep, supra*, 123 Cal.App.4th at p. 1064; see *Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 568 [factual contradictions between exhibit and pleading resolved in favor of exhibit].)

Even were that not the case, in our view, the two ideas are not mutually exclusive: one can certainly intend to form a trust as to certain property, while also intending that the same or other property be held in joint tenancy. (See *Estate of Gardner*,

*supra*, 187 Cal.App.4th at p. 552 [other alleged actions by settlor did "not preclude an alternative interpretation" of trust intent]; see also *Byrne v. Laura, supra,* (2 Cal.App.4th at p. 1071 [use of trust as a joint tenancy is " 'reasonably permissible' "]; *Brown v. Volz* (1949) 90 Cal.App.2d 793, 800 [similar].) This is especially the case where, as here, the amendment attempted to alter the distribution of—and, in some cases, continue to hold in trust—other trust assets besides the real property that is the subject of Monique's statute of frauds argument.

For these reasons, the petition sufficiently alleged the essential elements of trust formation with respect to the second amendment. Monique's contrary arguments do not constitute a valid alternative basis for upholding the trial court's order.[17]

---

[17] In light of our disposition, we need not reach Dolores's alternative contentions with respect to the Leisure Time stock and the propriety of amending her petition.

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court with instructions to vacate its order granting the motion for judgment on the pleadings.  Dolores Von Borstel is entitled to her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                              RICHARDSON (ANNE K.), J.*

We concur:

            EDMON, P.J.

            EGERTON, J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.